UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

No. 22-10713

EMPIRE INDEMNITY INSURANCE COMPANY,

Defendant/Appellant,

v.

THE BREAKWATER COMMONS ASSOCIATION, INC.,

Plaintiff/Appellee.

---

**BRIEF OF APPELLANT**
**EMPIRE INDEMNITY INSURANCE COMPANY**

---

On Appeal from the
United States District Court for the Middle District of Florida
No. 2:20-cv-00031-JLB-NPM

BUTLER WEIHMULLER KATZ
CRAIG LLP

J. PABLO CÁCERES, ESQ.
Florida Bar No.: 131229
pcaceres@butler.legal
CHRISTIAN LEE GONZÁLEZ-RIVERA, ESQ.
Florida Bar No.: 1020707
cgonzalez-rivera@butler.lega1
400 N. Ashley Drive, Suite 2300
Tampa, Florida 33602
Telephone:  (813) 281-1900
Facsimile:   (813) 281-0900

*Counsel for Empire Indemnity Insurance Company*

Empire Indemnity Insurance Company v. The Breakwater Commons Assn., Inc.
Case No. 22-10713

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rules of Appellate Procedure 26.1 and 28(a)(1), and 11th Circuit Rules 26.1-1, 26.1-2, and 26.1-3, Appellant, Empire Indemnity Insurance Company, files this Certificate of Interested Persons and Corporate Disclosure Statement. The following is a full and complete list of all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal.

1. Butler Weihmuller Katz Craig LLP - Counsel for Appellant

2. J. Pablo Caceres – Appellate Counsel for Appellant

3. Christian Lee González-Rivera – Appellate Counsel for Appellant

4. Empire Indemnity Insurance Company – Appellant

5. The Breakwater Commons Association, Inc. – Appellee

6. Boyle, Leonard & Anderson, P.A. – Counsel for Appellee

7. Gregory L. Evans – Appellate Counsel for Appellee

8. Mark Boyle, Sr. – Appellate Counsel for Appellee

/s/ *Christian Lee Gonzalez-Rivera*
CHRISTIAN L. GONZALEZ-RIVERA

Empire Indemnity Insurance Company v. The Breakwater Commons Assn., Inc.
Case No. 22-10713

# CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Circuit Rule 26.1-1, Appellant, Empire Indemnity Insurance Company, makes the following Corporate Disclosure:

Empire Indemnity Insurance Company is a wholly owned subsidiary of Empire Fire and Marine Insurance Company, an Illinois corporation. Empire Fire and Marine Insurance Company is a subsidiary of Zurich American Insurance Company, a New York corporation. Zurich American Insurance Company is a wholly owned subsidiary of Zurich Holding Company of America, Inc., a Delaware corporation. Zurich Holding Company of America, Inc. is wholly owned by Zurich Insurance Company Ltd., a Swiss corporation. Zurich Insurance Company Ltd. is directly owned by Zurich Insurance Group Ltd., a Swiss corporation. Zurich Insurance Group Ltd. is the only publicly traded parent company, with a listing on the Swiss stock exchange, and a further trading of American Depositary Receipts (Stock Ticker: ZURVY).

/s/ *Christian Lee Gonzalez-Rivera*
CHRISTIAN L. GONZALEZ-RIVERA

## STATEMENT REGARDING ORAL ARGUMENT

Because the issues are of first impression and their resolution impacts the enforcement of insurance appraisal provisions state and circuit-wide, Empire requests oral argument to assist the Court under Fed. R. App. P. 34(a)(1) and 11th Cir. R. 28-1(c).

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................C-1

CORPORATE DISCLOSURE STATEMENT .........................................................2

STATEMENT REGARDING ORAL ARGUMENT ............................................... i

TABLE OF CONTENTS............................................................................................ ii

TABLE OF CITATIONS ......................................................................................... iv

STATEMENT OF SUBJECT-MATTER AND APPELLATE

JURISDICTION................................................................................................. xxiii

STATEMENT OF THE ISSUES....................................................................................1

STATEMENT OF THE CASE...................................................................................4

I.      Introduction......................................................................................................4

II.     Historical and Legal Background ..................................................................5

        A.      Growth of Procedural Disarray in Compelling Appraisal ...................5

        B.      The Novel Process Defies Historical Practice ...................................10

III.    Factual and Procedural Background..............................................................15

        A.      The Property and the Policy .................................................................15

        B.      Empire Investigates and Adjusts the Claim .......................................16

        C.      Breakwater Sues Empire Mid-Adjustment .........................................17

STATEMENT OF THE STANDARD AND SCOPE OF REVIEW ......................21

SUMMARY OF THE ARGUMENT ......................................................................23

ARGUMENT ....................................................................................25

I.    The District Court Failed to Review *de novo* the Magistrate's Ruling
      Despite that Ruling's Consideration of a Dispositive Matter ......................25

II.   Compelling Appraisal without a Showing of Specific Performance
      under Rule 65 was Procedurally Improper .....................................................29

III.  Compelling Appraisal Absent Summary Judgment that Empire
      Breached the Provision Constituted a Grant of Unpled Relief
      Redressing an Un-adjudicated Wrong..........................................................40

IV.   The District Court Failed to Conclude that Breakwater Waived
      Appraisal by Demanding a Jury Trial of All Issues .....................................44

V.    The Court Wrongly Compelled Appraisal of Un-appraisable Amounts.......46

CONCLUSION ..................................................................................52

CERTIFICATE OF COMPLIANCE......................................................................53

CERTIFICATE OF SERVICE ............................................................................54

# TABLE OF CITATIONS

**Cases**

*Allegro at Boynton Beach, L.L.C. v. Pearson*,

    287 So. 3d 592 (Fla. 4th DCA 2019)..............................................................41

*Allen v. Amica Mutual Ins. Co.*,

    No. 1:12-cv-49, 2013 WL 11927705 (N.D. Ga. Feb. 28, 2013) ..................49

*Allen v. USAA Cas. Ins. Co.*,

    790 F.3d 1274 (11th Cir. 2015) ....................................................................51

*Allstate Insurance Company v. Suarez*,

    833 So. 2d 762 (Fla. 2002) ........................................................... 7, 10, 13, 35

*American Capital Assurance Corp. v. Leeward Bay at Tarpon Bay Condo.*

    *Ass'n, Inc.*,

    306 So. 3d 1238 (Fla. 2d DCA 2020)...........................................................36

*Anderson v. Auto-Owners Ins. Co.*,

    172 F.3d 767 (11th Cir. 1999) ......................................................................38

*Anoushfar v. Lexington Ins. Co.*,

    No. 21-11244, 2021 WL 4848073 (11th Cir. Oct. 18, 2021)........... 27, 30, 41

*Arbogast v. Bryan*,

    393 So. 2d 606 (Fla. 4th DCA 1981)............................................................44

*Auto-Owners Ins. Co. v. Anderson*,

    756 So. 2d 29 (Fla. 2000) .............................................................................38

iv

*Baldwin Realty Group Inc. v. Scottsdale Ins. Co.*,

   No. 6:18-cv-785-Or1-41DCI, 2018 WL 5221228 (M.D. Fla. Oct. 22,

   2018) ............................................................................................................25

*Battles, Inc. v. Nationwide General Ins. Co.*,

   No. 3:19-cv-13-DML-DCP, 2020 WL 6365513 (E.D. Tenn. March

   10, 2020) ................................................................. 14, 31, 33, 42

*Bettor v. Esurance Property and Casualty Ins. Co.*,

   No.: 18-61860-CIV-MORENO, 2019 WL 3408900 (S.D. Fla. June

   17, 2019) ......................................................................................25

*Biscayne Cove Condo. Ass'n, Inc. v. QBE Ins. Corp.*,

   2013 WL 2646828 (S.D. Fla. June 12, 2013).................................... 8, 26, 30

*Blue-Grace Logistics LLC v. Fahey*,

   340 F.R.D. 460 (M.D. Fla. 2022) ..................................................40

*Buckley Towers Condo., Inc. v. QBE Ins. Corp.*,

   395 Fed. App'x 659 (11th Cir. 2010)..................................... 48, 50

*Calzadilla v. Scottsdale Ins. Co.*,

   No. 18-25424, 2019 WL 2245518 (S.D. Fla. April 10, 2019) .............. 25, 32

*Caribbean I Owners' Ass'n, Inc. v. Great American Ins. Co. of N.Y.*,

   619 F.Supp.2d 1178 (S.D. Ga. 2008) ............................................50

*Castillo at Tiburon Condominium Ass'n, Inc. v. Empire Indemnity Ins. Co.,*

   No. 2:20-cv-468,, 2021 WL 4438370 (M.D. Fla. Sept. 28, 2021)...............25

*Ceballo v. Citizens Prop. Ins. Corp.*,

   967 So. 2d 811 (Fla. 2007) ...................................................... 47, 48

*Cedant Corp. v. Forbes*,

   70 F.Supp.2d 339 (S.D.N.Y. 1999) ......................................... 11, 37

*Citizens Prop. Ins. Corp. v. Cuban-Hebrew Congregation of Miami, Inc.*,

   5 So. 3d 709 (Fla. 3d DCA 2009)...................................... 14, 35, 37

*Citizens Prop. Ins. Corp. v. Mango Hill #6 Condo. Ass'n, Inc.*,

   117 So. 3d 1226 (Fla. 3d DCA 2013)......................... 35, 36, 40, 44

*City of Omaha v. Omaha Water Co.*,

   218 U.S. 180 (1910)...........................................................................35

*CMR Construction & Roofing, LLC v. Empire Indem. Ins. Co.*,

   843 Fed. App'x 189 (11th Cir. 2021) ............................................47

*Collins v. Collins*,

   53 Eng. Rep. 916 (1858) (same)...................................................35

*Columbia Cas. Co. v. Southern Flapjacks, Inc.*,

   868 F.2d 1217 (11th Cir. 1989) ...................................................35

*Compare Creekside Crossing Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*,

   No. 2:20-cv-00136, 2020 WL 5973177 (M.D. Fla. Sept. 2, 2020)................9

*Coral Reef Metro, LLC v. Scottsdale Ins. Co.*,

    2019 WL 700114 (M.D. Fla. Feb. 20, 2019)..................................................25

*Creekside Crossing Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*,

    No. 2:20-cv-00136, 2021 WL 2003007 (M.D. Fla. May 19, 2021)...... passim

*Cresthaven-Ashley Master Ass'n, Inc. v. Empire Indem. Ins. Co.*,

    No. 19-80959-civ, 2022 WL 873998 (S.D. Fla. Mar. 24, 2022)...................48

*Crossing Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*,

    No. 2:20-cv-136, 2022 WL 780950 (M.D. Fla. Mar. 15, 2022) ...................43

*Cypress Chase Condo. Ass'n A v. QBE Ins. Corp.*,

    No. 10-61987, 2013 WL 1191413 (S.D. Fla. Mar. 22, 2013).......................41

*Dantzler Lumber & Export Co. v. Columbia Cas. Co.*,

    115 Fla. 541 (1934)........................................................................................51

*Diamond Lake Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*,

    No. 2:19-cv-547, 2021 WL 6118076 (M.D. Fla. Dec. 27, 2021).................48

*Evanston Ins. Co. v. Cogswell Properties, LLC*,

    683 F.3d 684 (6th Cir. 2012) ........................................................................13

*Executive Plaza, LLC v. Peerless Ins. Co.*,

    No. 09-1976, 2010 WL 11632677 (E.D. N.Y. Feb. 8, 2010).......................48

*Ferrero v. Assoc. Materials Inc.*,

    923 F.2d 1441 (11th Cir. 1991) ............................................................. 10, 31

*Fireman's Fund Ins. Co. v. Steele Street Limited II*,

   2022 WL 39392 (10th Cir. Jan. 5, 2022)................................................. 21, 32

*Fla. Gaming Corp. v. Affiliated FM Ins. Co.*,

   2008 WL 11407210 (S.D. Fla. Apr. 21, 2008).........................................9, 36

*Fla. Ins. Guar. Ass'n v. Rodriguez*,

   153 So. 3d 301 (Fla. 5th DCA 2014)............................................................44

*Fla. Ins. Guar. Ass'n, Inc. v. Lustre*,

   163 So. 3d 624 (Fla. 2d DCA 2015)..............................................................46

*Fla. Ins. Guar. v. Monaghan*,

   167 So. 3d 511 (Fla. 5th DCA 2015)............................................................44

*Fla. Ins. Guaranty Ass'n v. Olympus Ass'n*,

   34 So.3d 791 (Fla. 4th DCA 2010)........................................................ 35, 36

*Ford v. American Security Ins. Co.*,

   No. 1:19-cv-20223-JLK, 2019 WL 6609239 (S.D. Fla. Dec. 5, 2019).........49

*Fouladi v. Geovera Specialty Ins. Co.*,

   No. 6:18-cv-326-Orl-40KRS, 2018 WL 3761039 (M.D. Fla. April 30,

   2018) ...........................................................................................................36

*Georgia Advocacy Office v. Jackson*,

   4 F.4th 1200 (11th Cir. 2021) ......................................................................39

*Great Lakes Ins. SE v. Concourse Plaza, A Condo. Ass'n, Inc.*,

    No. 21-cv-21873, 2022 WL 1681883 (S.D. Fla. May 26, 2022) .................42

*Grove Towers Condo. Ass'n, Inc. v. Lexington Ins. Co.*,

    No. 19-24199-Civ-Cooke/Goodman, 2020 WL 4561599 (S.D. Fla.

    June 9, 2020)................................................................................................36

*Hanover Fire Ins. Co. v. Lewis*,

    28 Fla. 209 (Fla. 1891) ................................................... 11, 38, 45

*Happy Hank Auction Co. v. American Eagle Fire Ins. Co.*,

    1 N.Y.2d 534 (N.Y. 1956)..........................................................................12

*Hayes v. Allstate Ins. Co.*,

    722 F.2d 1332 (7th Cir. 1983) ......................................................... 21, 31, 32

*Hendershott v. Ostuw*,

    No. 20-cv-80006, 2020 WL 6305105 (S.D. Fla. Oct. 14, 2020)............ 26, 41

*Hepburn et al. v. Auld. et al.*,

    5 Cranch 262 (1809) ........................................................... 11, 37

*Holmes v. Richet*,

    56 Cal. 307, 313 (Cal. 1880) .....................................................................11

*Indian Harbor Insurance Company v. International Studio Apartments, Inc.*,

    No. 09-60671-CIV-ALTONAGA/Brown, 2009 WL 10668754 (S.D.

    Fla. Sept. 22, 2009)................................................................... 42, 43

*J.P.F.D. Investment Corporation v. United Specialty Ins. Co.*,

    769 Fed. App'x 698 (11th Cir. 2019) ......................................... 21, 26, 34, 40

*J.W. Mariner Corp. v. Zurich American Ins. Co.*,

    No. 5:20-cv-143, 2021 WL 4958099 (N.D. Fla. July 7, 2021) ....................41

*Jacobs v. Nationwide Mut. Fire Ins. Co.*,

    236 F.3d 1282 (11th Cir. 2001) .............................................................. 21, 41

*Jeffrey S. by Ernest S. v. State Bd. Of Educ. Of State of Ga.*,

    896 F.2d 507 (11th Cir. 1990) .......................................................................25

*Jin Zhi Star Lt. LLC v. American Zurich Ins. Co.*,

    No. 08-61101-Civ-Moreno/Torres, 2011 WL 13110260 (S.D. Fla.

    June 16, 2011)................................................................................................36

*JM Walker LLC v. Acadia Ins. Co.*,

    356 Fed. App'x 744 (5th Cir. 2009) .............................................................22

*Johnson v. Nationwide Mut. Ins. Co.*,

    828 So. 2d 1021 (Fla. 2002) ...........................................................................7

*Jossfolk v. United Property & Cas. Ins. Co.*,

    110 So. 3d 110 (Fla. 4th DCA 2013)............................................................49

*La Gorge Palace Condo Ass'n, Inc. v. QBE Ins. Corp.*,

    733 F.Supp.2d 1332 (S.D. Fla. 2010)............................................................30

*Liberty American Ins. Co. v. Kennedy*,

    890 So. 2d 539 (Fla. 2d DCA 2005).................................................. 9, 36, 40

*Macom Technology Solutions Holdings, Inc. v. Ifineon Technologies AG*,

    881 F.3d 1323 (Fed. Cir. 2018) ....................................................................41

*Mapleton Processing, Inc. v. Society Ins. Co.*,

    No. C12-4083-LTS, 2013 WL 3467190 (N.D. Iowa July 10, 2013) .... passim

*Marbella at Spanish Wells 1 Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*,

    No. 2:21-cv-641, 2022 WL 1302328, (M.D. Fla. May 2, 2022)....................8

*MaxLite, Inc. v. ATG Electronics, Inc.*,

    No. 15-1116, 2019 WL 3283077 (D. N.J. July 22, 2019)............................39

*McCoy v. American Family Mut. Ins. Co.*,

    189 F.Supp.3d 896 (D. Minn. 2016) ...................................................... 30, 42

*McMahan v. Toto*,

    311 F.3d 1077 (11th Cir. 2002) .............................................................. 34, 36

*Metal Products Co., LLC v. Ohio Security Ins. Co.*,

    No. 21-11612, 2022 WL 104618 (11t Cir. Jan. 11, 2022) ...........................46

*Metropolitan Casualty Ins. Co. v. SFR Services L.L.C.,*

    2020 WL 4207375 (M.D. Fla. July 22, 2020)...............................................25

*Michelle Condominium, Inc. v. Certain Underwriters at Lloyd's, London,*

    2021 WL 4244899 (S.D. Fla. Sept. 17, 2021)...............................................25

*Milligan v. CCC Information Services, Inc.*,

    920 F.3d 146 (2d Cir. 2019) ...........................................................21

*New Amsterdam Cas. Co. v. J.H. Blackshear, Inc.*,

    156 So. 695 (Fla. 1934) .................................................................47

*Nygaard v. Property Damage Appraisers, Inc.*,

    779 Fed. App'x 474 (9th Cir. 2019) ...............................................21

*Omni Health Solutions, LLC v. Zurich Am. Ins. Co.*,

    857 F. App'x 501 (11th Cir. 2021) .................................................46

*Palmer v. Fidelity Nat'l Prop. & Cas. Ins. Co.*,

    No. 13-80741, 2014 WL 12461372 (S.D. Fla. Nov. 7, 2014)..................9, 42

*Parents Involved in Community Schools v. Seattle School Dist. No. 1*,

    551 U.S. 701 (2007)........................................................................33

*Parkway Baptist Church, Inc. v. Guideone Elite Ins. Co.*,

    No. 10-23965, 2011 WL 13099891 (S.D. Fla. Sept. 11, 2011) ....... 27, 30, 37

*PB Property Holdings, LLC v. Auto-Owners Ins. Co.*,

    No. 16-cv-1748, 2017 WL 7726696 (D. Colo. Jan. 26, 2017).....................27

*Penn Central Corp. v. Consolidated Rail Corp.*,

    56 N.Y.2d 120 (N.Y. Ct. App. 1982) .............................................12

*People's Trust Ins. Co. v. Fernandez*,

    317 So. 3d 207 (Fla. 3d DCA 2021)..............................................29

*People's Trust Ins. Co. v. Nowroozpour*,

    277 So. 3d 135 (Fla. 4th DCA 2019) ................................................. 14, 29, 33

*People's Trust Ins. Co. v. Slavin*,

    No. 4D21-3025, 2022 WL 1021043 (Fla. 4th DCA April 6, 2022) ............. 41

*People's Trust Ins. Co. v. Vidal*,

    305 So. 3d 710 (Fla. 3d DCA 2020) ............................................................ 29

*Pernas v. Scottsdale Ins. Co.*,

    No. 1:15-cv-21506, 2016 WL 471949 (S.D. Fla. Feb. 8, 2016) .................. 41

Petrello v. White,

    533 F.3d 110 (2d Cir. 2008) ....................................................................... 32

*Place at Naples III Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*,

    No. 2:21-cv-183, 2022 WL 714810 (M.D. Fla. Mar. 10, 2022) .................. 43

*Positano Place at Naples I Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*,

    2022 WL 1085541 (M.D. Fla. Jan. 26, 2022) .......................................... 8, 43

*PowerShare, Inc. v. Syntel, Inc.,*

    597 F.3d 10 (1st Cir. 2010) ......................................................................... 27

*Puryear v. State*,

    810 So. 2d 901 (Fla. 2002) ......................................................................... 38

*R & S Auto Sales v. Owners Ins. Co.*,

    No. 4:13-cv-479, 2015 WL 12434459 (S.D. Iowa Jan. 5, 2015) ................ 45

*Red Cross Line v. Atlantic Fruit Co.*,

    264 U.S. 109 (1924)................................................................ 10, 37

*Residences at European Village Condo. Ass'n, Inc. v. Rockhill Ins. Co.*,

    No. 3:19-cv-1490, 2020 WL 5948314 (M.D. Fla. July 17, 2020) ......... 26, 30

*Rodriguez v. Powell,*

    853 Fed.App'x 613 (11th Cir. 2021) ............................................21

*Rogers v. State Farm Fire & Cas. Co.*,

    984 So. 2d 382 (Ala. 2007)......................................................7

*Ruckdeschel v. People's Trust Ins. Co.*,

    327 So. 3d 311 (Fla. 4th DCA 2021)...........................................30

*Saba v. Homeland Ins. Co. of America*, 159 Ohio St. 237, 248-249 (Ohio

    1953) ................................................................................ 11, 37

*Safepoint Ins. Co. v. Hallet*,

    No. 5D20-206, 2021 WL 2599656 (Fla. 5th DCA, June 25, 2021)..............36

Salt Lake Tribune Publ'g Co., LLC v. Management Planning, Inc.,

    390 F.3d 684 (10th Cir. 2004) ....................................................13

*Saltponds Condo. Ass'n, Inc. v. Rockhill Ins. Co.*,

    No. 20-CV-10063-JEM, 2020 WL 6875747 (S.D. Fla. Oct. 26, 2020)........30

*Sands on the Ocean Condo. Ass'n, Inc. v. QBE Ins. Corp.*,

    No. 05-14362-Civ, 2009 WL 790120 (S.D. Fla. Mar. 24, 2009).................36

*Sauer v. Xerox Corp.*,

    17 F.Supp.2d 193 (W.D. N.Y. 1988)............................................................31

*SB Holdings I, LLC v. Indian Harbor Ins. Co.*,

    No. 6:19-cv-668-Or1-40DCI, 2020 WL 1674326 (M.D. Fla. Jan. 9,

    2020) ..............................................................................................................25

*Shands Jacksonville Med. Ctr., Inc. v. Nat'l Union Fire Ins. Co.*,

    No. 3:14-cv-930, 2015 WL 5714870 (M.D. Fla. Sept. 22, 2015)................28

*Sos v. State Farm Mutual Auto. Ins. Co.*,

    396 F.Supp.3d 1074 (M.D. Fla. 2019) .........................................................50

*St. Panteleimon Russian Orthodox Church v. Church Mut. Ins. Co.*,

    No. 13-1977, 2013 WL 6190400 (D. Minn. 2016) ................................ 31, 42

*State Farm Fire & Cas. Co. v. Harper*,

    2022 WL 989088 (M.D. Tenn. Mar. 31, 2022)............................................28

*State Farm Fla. Ins. Co. v. Gonzalez*,

    76 So. 3d 34 (Fla. 3d DCA 2011)................................................................35

*State Farm Fla. Ins. Co. v. Hernandez*,

    172 So. 3d 473 (Fla. 3d DCA 2015).............................................................46

*Stillman v. Travelers Ins. Co.*,

    88 F.3d 911 (11th Cir. 1996) .......................................................................41

*Sun Ins. Office, Ltd. v. Clay*,

    133 So. 2d 735 (Fla. 1961) ............................................................38

*Supreme Fuels Trading FZE v. Sargeant*,

    689 F.3d 1244 (11th Cir. 2012) ....................................................32

*Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*,

    250 F. Supp. 2d 1357 (M.D. Fla. 2003) ............................. 9, 34, 36

*Todd v. Hyzer*,

    18 So. 888 (Fla. 1944) ..................................................................30

Trinidad v. Fla. Peninsula Ins. Co.,

    121 So. 3d 433 (Fla. 2013) ...........................................................50

*Tscheider v. Biddle*,

    24 F. Cas. 253 (E.D. Miss. 1877) .................................................11

*Twelfth Ave. Investments, Inc. v. Smith*,

    979 So. 2d 1216 (Fla. 4th DCA 2008)..........................................29

*Vazquez v. Citizens Prop. Ins. Corp.*,

    304 So. 3d 1280 (Fla. 3d DCA 2020)...........................................50

*Vista Pointe Townhome Ass'n Inc. v. Auto-Owners Ins. Co.*,

    2018 WL 1773407 (D. Colo. April 13, 2018) ...................... passim

*Walnut Creek Townhome Ass'n v. Depositors Ins. Co.*,

    906 N.W.2d 205 (Iowa Ct. App. July 19, 2017) .............................7

*Waterford Condo. Ass'n of Collier Cty., Inc. v. Empire Indem. Ins. Co.*,

  No. 2:19-cv-81, 2019 WL 3852731 (M.D. Fla. Aug. 16, 2019) ........ 9, 42, 43

*Westar Energy, Inc. v. Lake*,

  552 F.3d 1215 (10th Cir. 2009) ...................................................................31

*Western Surety Co. v. PASI of LA, Inc.*,

  334 F.Supp.3d 764 (M.D. La. Sept. 25, 2018) ....................................... 10, 32

*Williams v. Citizen Prop. Ins. Co.*,

  285 So. 3d 334 (Fla. 4th DCA 2019).........................................................36

*Wingerter v. Chester Quarry Co.*,

  185 F.3d 657 (7th Cir. 1998) ......................................................................21

*Woodsworth v. Erie Ins. Co.*,

  743 F.Supp.2d 201 (W.D. N.Y. 2010).........................................................48

*Woodward v. Liberty Mut. Ins. Co.*,

  No. 3:09-cv-0228, 2010 WL 1186323 (N.D. Tex. Mar. 26, 2010)..............31

**Rules**

112 A.L.R. § 9 (1938) ...................................................................................12

28 U.S.C. §636(b)(1)(B) ...............................................................................26

44 A.L.R.2d 850 §1 (1955) ...........................................................................11

Fed. R. Civ. P.  38(c)....................................................................................23

Fed. R. Civ. P. 38(b) ....................................................................................45

Fed. R. Civ. P. 38(c)..............................................................2, 45

Fed. R. Civ. P. 56 ...................................................................4

Fed. R. Civ. P. 56(a)..............................................................43

Fed. R. Civ. P. 65 .......................................................... passim

Fed. R. Civ. P. 72(a).......................................................... 26, 28

Fed. R. Civ. P. 72(b) ................................................ 20, 21, 26, 27

Fed. R. Civ. P. 72(b)(1)....................................................... 23, 26

Fed. R. Civ. P. 72(b)(3).........................................................21

## Codes

28 U.S.C. §1292(a)(1).......................................................1, 31

28 U.S.C. §636(b)(1)(B) ........................................................20

## Other Authorities

15 Couch on Insurance §209:10 (2021).............................13

16 Couch on Insurance § 232:170 (3d ed., 2021)....................... 28, 31

5 Pomeroy, Equity Jurisprudence (4th ed. 1919)...............37

Amy M. Coughenourd, *Appraisal and the Property Insurance Appraisal*

    *Clause—A Critical Analysis: Guidance and Recommendations for*

    *Arizona*, 41 Ariz. St. L.J. 403, 413 (2009)....................13

Amy O'Connor, *NAIC Data: Florida Property Lawsuits Total 76% of*

    *Insurer Litigation in U.S.*, Insurance Journal (April 14, 2021).................6

Amy Schmitz, *Ending A Mud Bowl: Defining Arbitration's Finality Through Functional Analysis*, 37 GA. L. REV. 123, 169 (2002) ..................................31

Amy Schmitz, *Refreshing Contractual Analysis of ADR Agreements by Curing Bipolar Avoidance of Modern Common Law*, 9 HARV. NEGOT. L. REV. 1, 2, 4 n.22 (2004) ............................................................................39

BAXTER DUNAWAY, 4 LAW OF DISTRESSED REAL ESTATE §44A:17 (2022 update) ..........................................................................................6

Charles Edwards, *An Appraisal of the Appraisal Remedy in Property Insurance*, 136 THE NAT'L REV. (Vol. XII) (May, 11, 2022)..........................6

David Frisch, *Commercial Common Law, the United Nations Convention on the International Sale of Goods, and the Inertia of Habit*, 74 TLN. L. Rev. 495, 541 (1999) ...............................................................................14

Ed Leefeldt, *Why Is Homeowners Insurance In Florida Such a Disaster?*, FORBES (Mar. 26, 2021)...................................................................6

Evan Stephenson & Kayla Scroggins-Uptigrove, *"Just Win, Baby": The Tenth Circuit Rejects the "Anything Goes" Tactics of the Hail-Litigation Gold Rush,* 96 DENVER L. REV. 267, 267, 276 (2019) ..................6

Gary Williams, *Winning the Property Insurance Appraisal*, 45-OCT JTLATRIAL 22, 26 (2009) ............................................................10

GREGORY DELL ET AL., FLORIDA INSURANCE LAW & PRACTICE §14:8 (2021-
2022 ed.) ........................................................................................9

Hayes, *Specific Performance of Contracts for Arbitration or Valuation* 1
CORN. L. QUART. 225 (1916).......................................................37

Jason Kirwan, *Appraising A Presumption: A Modern Look at the Doctrine of
Specific Performance In Real Estate Contracts*, 47 WM. & MARY L.
REV. 697, 701 (2005).....................................................................29

Johnny Parker, *Understanding the Insurance Policy Appraisal Clause: A
Four-Step Program*, 37 U. TOL. L. REV. 931, 931 (2006) ............................6

JONATHAN WILKOFSKY, THE LAW AND PROCEDURE OF APPRAISAL 344-345,
349 (3d ed., 2015)............................................................... 6, 12, 13

Law & Starinovich, *What Is It Worth? A Critical Analysis of Insurance
Appraisal*,................................................................................31

Mark Ticer, *A Primer on Appraisal in Texas: One of the Most Frequently
Abused and Misused Provisions in an Insurance Policy*, 5 J. TEX. INS.
L. 41, 42 (2004) .............................................................................6

MICHAEL BOYER & BARRY ZALMA, PROPERTY INVESTIGATION CHECKLISTS:
UNCOVERING INSURANCE FRAUD §1:42 (13th ed., 2021 update).....................6

Richard Coulson, *Is Contractual Arbitration an Unconstitutional Waiver of the Right to Trial by Jury in Oklahoma?*, 16 OKLA. CITY U. L. REV. 1, 11 (1991) ..................................................................12

Samuel Bray, *The System of Equitable Remedies*, 63 UCLA L. REV. 530, 557 (2016) ..................................................................39

*Specific Enforcement of Arbitration Contracts*, U. PENN. L. REV. 160, 161, 176 (1934) ..................................................................12

*Specific Performance of Contracts Containing A Provision to Arbitrate*, 31 Y.L.J. 670, 670-671 (1922) ..................................................................37

*Specific Performance of Contracts for Arbitration or Valuation*, 1 CORNELL L. REV. 225, 225 (1916) ..................................................................12

Stephen N. Subrin, *How Equity Conquered Common Law: The Federal Rules of Civil Procedure in Historical Perspective*, 135 U. PENN. L. R. 909, 920 (1987) ..................................................................32

Timothy Gray et al., *Benefits, Pitfalls, and Trends in Property Appraisal*, 44-SPG BRIEF 20, 21 (2015) ..................................................................6, 7

Timothy P. Law & Jillian L. Starnovicha, *What Is It Worth? A Critical Analysis of Insurance Appraisal*, 13 CONN. INS. L.J. 291, 298 (2006-2007) ..................................................................13

Wesley A. Sturges & William W. Sturges, *Appraisals of Loss and Damage Under Insurance Policies*, 13 U. MIAMI L. REV. 1, 2 (1958)........................12

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

The District Court has original jurisdiction under 28 U.S.C. §1332(a)(1) and this Court has appellate jurisdiction under §1292(a)(1). The order appealed constituted injunctive relief, since it compelled Empire's specific performance of the insurance policy's appraisal provision.

## STATEMENT OF THE ISSUES

All issues involve purely legal questions seeking this Court's first impression. Several have state and circuit-wide impact.

First, Empire may appeal from interlocutory orders compelling appraisal under 28 U.S.C. §1292(a)(1). The specific performance of a contract is an interlocutory remedy contemplated by Section 1292(a)(1), if the order's *form* or *substance* comes within the scope of Fed. R. Civ. P. 65. Despite affording injunctive relief in compelling appraisal, the lower court refused to acknowledge doing as much. **Is the form or substance of the order injunctive and, thus, appealable under Section 1292(a)(1)?**[1]

Second, the district court erred in reviewing the Honorable Magistrate's appraisal ruling for clear error rather than *de novo*. The correct and universal practice in this circuit is to review such rulings *de novo*. **Must the district court have reviewed the Magistrate's appraisal ruling** *de novo*?

Third, the district court improperly compelled appraisal outside the parameters of Rule 65. Florida law regards compelling appraisal a substantive right to the specific performance of the provision. Federal courts exercise equity jurisdiction in affording such relief through Rule 65. Below, the court failed to do this, compelling appraisal as something *other than* specific performance instead,

---

[1] Empire rests on its jurisdictional brief in answering "yes" to this question.

without the relief being pleaded, proven, or procedurally obtained under the Federal Rules of Civil Procedure. **May a federal district court compel an insurance appraisal outside its equity jurisdiction under Rule 65?**

Fourth, the district court incorrectly compelled appraisal without adjudicating Empire's alleged breach of the provision through summary judgment. Specific performance of a contract is a remedy presupposing the existence and adjudication of a party's breach. Here, the lower court refused to require a summary judgment showing under Rule 56 before granting relief. **May a federal district court compel an insurance appraisal without adjudicating the breach of the provision through summary judgment?**

Fifth, the district court wrongly concluded that Breakwater did not waive appraisal by demanding a jury trial of all issues. Breakwater requested a jury trial of all issues "for which a right to jury trial exists" under Florida law. Empire did as well. Florida's common law deems the amount of loss a triable issue, where the party seeking appraisal has waived the right. Breakwater withdrew its only count seeking appraisal. Empire never consented to appraisal. Yet, the lower court compelled appraisal over Empire's objection that Breakwater's motion to compel appraisal sought to untimely modify its jury trial demand under Fed. R. Civ. P. 38(c). **May a district court compel appraisal, where the moving party demands a jury trial of all issues and fails to exclude the amount of loss under Rule 38(c)?**

Lastly, the district court erroneously compelled appraisal of the amount of Replacement Cost Value ("RCV") for repairs and replacements neither alleged nor shown to be performed or actually paid for in the amount sought. RCV benefits are in the nature of reimbursement. Empire does not owe such benefits until and unless the claimed repairs or replacements have been completed, nor could it owe more than the amount of money actually spent on completed work. Breakwater seeks reimbursement for $27.5 million it neither alleges nor has shown spent on completed repairs. Here, appraising hypothetical RCV and Ordinance or Law ("O&L") expenses is a moot exercise involving an unripe claim. And yet, the lower court compelled appraisal. **May a federal district court compel appraisal of RCV or O&L benefits, where the amounts claimed are not for reimbursement of completed, paid-for, or incurred repair expenses?**

## STATEMENT OF THE CASE

### I.    Introduction

Judicial enforcement of insurance appraisals is broken. Federal procedure granting such relief has grown arbitrary and uncertain. It should be neither. Despite raising new questions of procedure, including how a federal court may properly compel appraisal, this case does not demand novel solutions. This Court is aided by long-standing common law and federal equitable principles. In and out of Florida, compelling appraisal constitutes the injunctive remedy of specific performance, absent a contrary statute. Logically, Federal Rules of Civil Procedure 56 and 65 should govern access to such relief. These rules safeguard due process in granting pleaded remedies before trial and compelling parties to act in aid of such relief. Yet, these rules are routinely side-stepped in compelling appraisal in this circuit.

Instead, district courts increasingly mirror a worrisome practice spreading among Florida courts. Rather than compel appraisal upon a showing of entitlement to specific performance, courts do so upon mere motion, without injunctive relief needing to be pleaded or proven. Adding to the uncertainty, district courts even allow these motions despite the moving party having initially pled—or attempted to plead—entitlement to specific performance. The result is a novel and unprincipled procedure. Essentially, the practice affords the benefits of Rules 56 and 65 without imposing on movants any of the attending burdens.

Against this backdrop, Empire was compelled to appraise below. It appeals from this unprecedented procedural shortcut to regain the long-standing guarantees of federal law and equity.

## II.    Historical and Legal Background

### A.    Growth of Procedural Disarray in Compelling Appraisal

Appraisal is routinely sought in cases like this one, with condominium associations claiming millions of dollars in benefits allegedly owed. Despite the high stakes involved in insurance appraisals, federal courts are inconsistent in how they compel them. The current state of disarray in compelling appraisal explains why the court below resorted to a novel procedure, how the latter contrasts with historical practice, and what the stakes of this appeal are for Empire and similarly situated parties.

Previously rare and cost-effective, appraisals are now the expensive "new normal" in property insurance claims due to climbing litigation. *See* Johnny Parker, *Understanding the Insurance Policy Appraisal Clause: A Four-Step Program*, 37 U.

TOL. L. REV. 931, 931 (2006).[2] The "gold rush"[3] to sue for appraisal raises concerns about exaggerated or fraudulent repair and replacement estimates. *See* MICHAEL BOYER & BARRY ZALMA, PROPERTY INVESTIGATION CHECKLISTS: UNCOVERING INSURANCE FRAUD §1:42 (13th ed., 2021 update).[4] Florida, of course, is ground zero for such litigation.[5]

---

[2] *See also* JONATHAN WILKOFSKY, THE LAW AND PROCEDURE OF APPRAISAL 5, 60 (3d ed., 2015) (noting increased litigation and expense); Timothy Gray, Brian Odom, & Shannon O'Malley, *Benefits, Pitfalls, and Trends in Property Insurance Appraisal*, 44-SPG BRIEF 20, 22 (2015) (intended as cost-effective); Mark Ticer, *A Primer on Appraisal in Texas: One of the Most Frequently Abused and Misused Provisions in an Insurance Policy*, 5 J. TEX. INS. L. 41, 42 (2004) (historically intended to benefit insurer).

[3] *Cf.* Evan Stephenson & Kayla Scroggins-Uptigrove, *"Just Win, Baby": The Tenth Circuit Rejects the "Anything Goes" Tactics of the Hail-Litigation Gold Rush,* 96 DENVER L. REV. 267, 267, 276 (2019) (describing increase in federal storm litigation as "gold rush," defined as "when the law substantially creates or expands opportunities to make money by filing civil lawsuits, and plaintiffs' lawyers respond . . . by filing many new lawsuits that previously would not have been brought").

[4] *Cf. also* BAXTER DUNAWAY, 4 LAW OF DISTRESSED REAL ESTATE §44A:17 (2022 update) (55% of real estate appraisers reported being pressured to inflate value). One wonders what that figure is among insurance appraisers, "not governed by any industry standards." Charles Edwards, *An Appraisal of the Appraisal Remedy in Property Insurance*, 136 THE NAT'L REV. (Vol. XII) (May, 11, 2022).

[5] Florida homeowner insurance litigation represented 76.4% of such litigation nationwide in 2019. Amy O'Connor, *NAIC Data: Florida Property Lawsuits Total 76% of Insurer Litigation in U.S.*, INSURANCE JOURNAL (April 14, 2021). This has turned Florida into "a legal sinkhole," "threatening to swamp [insurers] even during years when there are no storms," impacting both industry profits and homeowner premiums. Ed Leefeldt, *Why Is Homeowners Insurance In Florida Such a Disaster?*, FORBES (Mar. 26, 2021) ("Florida insurers saw a profit of almost $800 million in 2014 dwindle to a net loss of $340 million in 2019[.]").

The Florida Supreme Court's decision in *Johnson* likely played a role in the proliferation of appraisals and related litigation. *Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021 (Fla. 2002). Deviating from history,[6] *Johnson* allowed appraisers to decide damage causation, a coverage issue normally reserved for courts. Perhaps the Court did not understand it at the time, but allowing appraisers to determine causation is a practice that raises due process concerns. *See, e.g., Walnut Creek Townhome Ass'n v. Depositors Ins. Co.*, 906 N.W.2d 205, 205 (Iowa Ct. App. July 19, 2017) (McDonald, J., dissenting). *Johnson* also exponentially raised the stakes, giving appraisers the ability to directly or indirectly decide coverage issues in multi-million dollar cases.

A subsequent Florida Supreme Court case further compounded the stakes in appraisal. While *Johnson* expanded the authority of appraisers, the Florida Supreme Court then reduced their accountability and procedural safeguards in 2002, when it held that the Arbitration Code was inapplicable to appraisals. *Allstate Insurance Company v. Suarez*, 833 So. 2d 762 (Fla. 2002). With the onslaught of the 2005 and

---

[6] *Cf.* Timothy Gray et al., *Benefits, Pitfalls, and Trends in Property Appraisal*, 44-SPG BRIEF 20, 21 (2015) (historically, appraisals only invoked if agreement existed on existence and scope of damage). Alabama, part of this circuit, continues to adhere to the majoritarian interpretation of appraisal as excluding causation determinations, openly rejecting *Johnson*. *See Rogers v. State Farm Fire & Cas. Co.*, 984 So. 2d 382, 392 (Ala. 2007). Thus, a federal court in Alabama, construing an identical appraisal provision, will reach a result different from one in Florida.

2006 hurricane seasons, Florida experienced a "significant rise" in appraisal demands ever since.[7]

As a result of *Johnson* and *Suarez*, the perception is that not only could appraisers settle the scope, cause, and value of a multi-million dollar loss, but they could also do it *however* they wish. Any claim may become a multi-million dollar one. Unsurprisingly, disputes often arise involving the procedural and substantive contours of appraisal to correct that perception.

Yet, Federal courts have grown procedurally unpredictable in compelling appraisal. Some require that appraisal be pleaded or proven as specific performance. *See, e.g., Biscayne Cove Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 10-23728-CIV, 2013 WL 2646828, at *3 (S.D. Fla. June 12, 2013). Others do not, denying that compelling appraisal is "remedial" at all. *See, e.g., Marbella at Spanish Wells 1 Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-cv-641, 2022 WL 1302328, at *1 (M.D. Fla. May 2, 2022). Others leave procedural burdens to the moving party's choice. *See, e.g., Positano Place at Naples I Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-cv-178, 2022 WL 1085541, at *6 (M.D. Fla. Jan. 26, 2022).

Similarly, some courts construe motions to compel appraisal as essentially seeking summary judgment. *See, e.g., Palmer v. Fidelity Nat'l Prop. & Cas. Ins.*

---

[7] Thomas Kos, *The Appraisal Process*, PROPERTY CASUALTY 360 (Nov. 2, 2007).

*Co.,* No. 13-80741, 2014 WL 12461372, at \*5 (S.D. Fla. Nov. 7, 2014). Others do

not. *See, e.g., Waterford Condo. Ass'n of Collier Cty., Inc. v. Empire Indem. Ins.*

*Co.,* No. 2:19-cv-81, 2019 WL 3852731, at \*2 (M.D. Fla. Aug. 16, 2019). Even the

same judge will occasionally equivocate on the issue. *Compare Creekside Crossing*

*Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-00136, 2020 WL

5973177, at \*4 (M.D. Fla. Sept. 2, 2020) (deeming "motion to compel appraisal . . .

presently equivalent to a summary judgment motion"), *with Creekside Crossing*

*Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-136, 2021 WL 2003007,

at \*1 (M.D. Fla. May 19, 2021) (deeming motion for summary judgment "not the

proper vehicle to address appraisal").

Relatedly, inconsistency also abounds in enforcing ensuing awards. Some

courts properly allow insurers to contest elements of coverage post-appraisal. Others

do not. A minority in this circuit continues to advocate the analogy of appraisals to

arbitration, "confirming" awards the same way. On this, "the federal courts . . . have

[also] muddied the waters." GREGORY DELL ET AL., FLORIDA INSURANCE LAW &

PRACTICE §14:8 (2021-2022 ed.).[8]

---

[8] *Compare, e.g., Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*, 250 F.
Supp. 2d 1357 (M.D. Fla. 2003) (disallowing insurer from contesting elements of
coverage post-appraisal), *with Liberty American Ins. Co. v. Kennedy*, 890 So. 2d
539, 541 (Fla. 2d DCA 2005) (disapproving of *Three Palms Pointe* and allowing
challenge of coverage elements post-appraisal), *Fla. Gaming Corp. v. Affiliated FM*
*Ins. Co.*, No. 07-20897-Civ-Ungaro, 2008 WL 11407210, at \*1 n.1 (S.D. Fla. Apr.
21, 2008) (following *Kennedy*). Due to *Three Palms Pointe*, parties like Breakwater

Since *Suarez*, a novel practice has emerged whereby federal courts increasingly compel appraisal upon mere motion, a shadow of the process traditionally required for specific performance. And absent from federal "equity jurisdiction," embodied by Rule 65. *See Ferrero v. Assoc. Materials Inc.*, 923 F.2d 1441, 1448 (11th Cir. 1991).[9] The court below noted and relied on this novel practice in refusing to require a specific performance showing [R. 440, 492, 494].

### B.    The Novel Process Defies Historical Practice

There is nothing normal to this "new normal" of compelling appraisal upon mere motions and argument of counsel. Although appraisal "has been a part of property insurance for at least 200 years," Gary Williams, *Winning the Property Insurance Appraisal*, 45-OCT JTLATRIAL 22, 26 (2009), this other novel practice is fairly recent everywhere.

Historically, courts rarely compelled appraisal. In theory, they could do so through specific performance. *Red Cross Line v. Atlantic Fruit Co.*, 264 U.S. 109, 120-121 (1924). Yet, in practice, they did not. "[S]pecific performance [wa]s a departure from common law." *Hepburn et al. v. Auld. et al*., 5 Cranch 262, 279

---

often sue only to compel appraisal and then ask the district court to rubber-stamp any award, contemplating no meaningful litigation, discovery, or trial [*cf.* R. 68].

[9] *Cf. also Western Surety Co. v. PASI of LA, Inc.*, 334 F.Supp.3d 764, 799 (M.D. La. Sept. 25, 2018) ("[T]he Court cannot enforce state law allowing specific performance absent proof of . . . Rule 65's requirements.").

(1809). And breach of contract damages were available: a trial in lieu of appraisal could determine the amount of loss. *See* 44 A.L.R.2d 850 §1 (1955) (insurer's failure to appraise "abrogate[d] the appraisal clause," freeing insured to "institute an action for damages for the breach").[10] So too in Florida. *Cf. Hanover Fire Ins. Co. v. Lewis*, 28 Fla. 209, 247-249 (Fla. 1891) (reversing jury verdict for exceeding amount calculated by appraisers). Although some courts barred suit unless appraisal took place,[11] consequential damages were available for wrongful refusal. *See Biddle*, 24 F. Cas. at 256.[12]

Despite the "dearth of direct authority" on some aspects, 44 A.L.R.2d 850 §1 (1955), enough exists: historically, appraisal was either not specifically performable at all, or was in theory but denied in practice due to available breach of contract damages. *See* Alfred Hayes, *Specific Performance of Contracts for Arbitration or*

---

[10] *See also Cedant Corp. v. Forbes*, 70 F.Supp.2d 339, 343 (S.D.N.Y. 1999); *Saba v. Homeland Ins. Co. of America*, 159 Ohio St. 237, 248-249 (Ohio 1953) (Hart, J., dissenting) (explaining common law refusal); *Tscheider v. Biddle*, 24 F. Cas. 253, 255 (E.D. Miss. 1877) (noting availability of damages).

[11] *Holmes v. Richet*, 56 Cal. 307, 313, 315 (Cal. 1880) (acknowledging failure of policy to make it a condition precedent, but still deeming appraisal as such).

[12] *Biddle*, 24 F. Cas. at 256. *Cf. also Vista Pointe Townhome Ass'n Inc.*, 2018 WL 1773407, at *6-7 (acknowledging insured's "'chicken-and-egg' dilemma" but noting adequate remedy in insured's bad faith claim).

*Valuation*, 1 CORNELL L. REV. 225, 225 (1916) ("doctrine that equity will not specifically enforce contracts for . . . valuation" "almost uniformly adhered to").[13]

Today, most jurisdictions continue to enforce appraisal through specific performance. JONATHAN WILKOFSKY, THE LAW AND PROCEDURE OF APPRAISAL 344-345, 349 (3d ed., 2015). However, some did not allow such specific performance absent an enabling statute. *See Happy Hank Auction Co. v. American Eagle Fire Ins. Co.*, 1 N.Y.2d 534, 538 (N.Y. 1956).[14] The proliferation of arbitration statutes caused

---

[13] *See also* Sidney Simpson, *Specific Enforcement of Arbitration Contracts*, U. PENN. L. REV. 160, 161, 176 (1934) (noting refusal to enforce even "in spite of the manifest inadequacy of the legal remedy," and explaining any change must be legislated); Wesley A. Sturges & William W. Sturges, *Appraisals of Loss and Damage Under Insurance Policies*, 13 U. MIAMI L. REV. 1, 2 (1958) (appraisal "enforcement" "at common law" "suggests, of course, specific performance of the provision" through a suit "to obtain a[n] . . . injunctional order that the non-complying party proceed with appraisal," to force the appointment of appraisers or umpires, or for damages).

[14] *See also Penn Central Corp. v. Consolidated Rail Corp.*, 56 N.Y.2d 120, 129 (N.Y. Ct. App. 1982) (deeming specific performance of appraisal "a remedy not available at common law"). *Happy Hank's* view of the common law of appraisal was first contradicted by *Saba*, 159 Ohio St. at 237. The dispute was whether specific performance was available—if rarely merited—or not at all. Even critics of *Happy Hank* admit that *Saba*'s approach was "new . . . within traditional equity jurisprudence." *See* Sturges, *supra* at 9, 13. Sturges is incorrect that no "settled practice" existed either way on this issue. *See, e.g.,* 112 A.L.R. 9 (1938) (noting case law disproving Sturges' claims of "insufficient authority" on issue); Richard Coulson, *Is Contractual Arbitration an Unconstitutional Waiver of the Right to Trial by Jury in Oklahoma?*, 16 OKLA. CITY U. L. REV. 1, 11 (1991) (labeling "common law of arbitration" "monolithic").

further confusion in jurisdictions where they do not expressly include appraisals.[15] And yet, "[t]he distinction . . . can have ramifications on the authority of the court." 15 COUCH ON INSURANCE §209:10 (2021 update).[16]

Despite the "numerous courts around the country . . . tak[ing] guidance from cases and statutes relating to arbitration, insurance appraisal is actually distinct." WILKOFSKY, THE LAW AND PROCEDURE OF APPRAISAL at 21. Most states recognize the difference. *Id.* at 22-24. The analogy has yielded "serious consequences" nationwide. *Id.* at 37.

So too in this circuit. Pre-*Suarez* cases applying the Arbitration Code to appraisals caused "confus[ion] . . . with somewhat unpredictable consequences." WILKOFSKY, THE LAW AND PROCEDURE OF APPRAISAL at 23. The analogy is motivated by policy considerations. *Id.* at 39. Against *Suarez*, courts in this circuit continue to compel appraisal by relying on pre-*Suarez* cases. Even when Florida

---

[15] *See* Amy M. Coughenourd, *Appraisal and the Property Insurance Appraisal Clause—A Critical Analysis: Guidance and Recommendations for Arizona*, 41 ARIZ. ST. L.J. 403, 413 (2009). Nor do appraisals come within the Federal Arbitration Act. *Salt Lake Tribune Publ'g Co., LLC v. Management Planning, Inc.,* 390 F.3d 684 (10th Cir. 2004); *Evanston Ins. Co. v. Cogswell Properties, LLC*, 683 F.3d 684 (6th Cir. 2012).

[16] Timothy P. Law & Jillian L. Starnovicha, *What Is It Worth? A Critical Analysis of Insurance Appraisal*, 13 CONN. INS. L.J. 291, 298 (2006-2007) (issue "impact[s] the applicability of state and federal laws, as well as the procedural protections afforded the participants").

courts increasingly warn that, in the appraisal context, "the analogy [to the Code] [i]s misplaced." *Cuban-Hebrew Congregation of Miami, Inc.*, 5 So. 3d at 712.

The novel practice compelling appraisal has become noticed. *People's Trust Ins. Co. v. Nowroozpour*, 277 So. 3d 135, 136 (Fla. 4th DCA 2019) (deeming, in *dicta*, mere motion to compel appraisal as "traditional" as pleading and proving specific performance). But there is nothing "traditional" about it, especially in federal court. *See Mapleton Processing, Inc. v. Society Ins. Co.*, No. C12-4083-LTS, 2013 WL 3467190, at *24 (N.D. Iowa July 10, 2013) (disavowing such power).[17] The practice highlights why "[f]ew premises are recited so . . . reflexively, as 'specific performance is an extraordinary remedy.'" David Frisch, *Commercial Common Law, the United Nations Convention on the International Sale of Goods, and the Inertia of Habit*, 74 TLN. L. Rev. 495, 541 (1999). In the insurance context, the remedy is becoming increasingly ordinary.

---

[17] *See also Vista Pointe Townhome Ass'n Inc.*, 2018 WL 1773407, at *6 n.5 (same); *Battles, Inc. v. Nationwide General Ins. Co.*, No. 3:19-cv-13-DML-DCP, 2020 WL 6365513, at *4-*5 (E.D. Tenn. March 10, 2020) (same).

## III.    Factual and Procedural Background[18]

### A.    The Property and the Policy

This case involves a Hurricane Irma claim that Empire investigated and paid in the amount it believed owed. Breakwater, a 28-building residential complex, stands on Florida's southwestern shore in Naples [R. 132 (¶3)]. Each building is separately scheduled and insured under a policy, number ECL9490549-02 (the "Policy") ($71,048,564 total value). *Id.* And each is subject to a 3% deductible (totaling $2,131,456.92). *Id.*

The Policy pays Replacement Cost coverage benefits by default after repairs are completed, but allows Breakwater to present, instead, a separate, specific ACV claim without having to perform repairs:

> **3. Replacement Cost**
>
> **a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.
>
> [. . .]
>
> **c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

---

[18] All references to the Record on Appeal—the appendix to Empire's merits brief to be filed shortly—are as follows: "R. at _," or "R. at _ (¶_)."

15

[R. 171 (Form CP 00 17 06 07 at G3(c) (page 14 of 14))]. The Policy also contains an appraisal provision [R. 173], which reads:

**Mediation Or Appraisal**

If we and you:

[. . .]

**B.** Disagree on the value of the property or the amount of loss, either may request an appraisal of the loss, in writing. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**1.** Pay its chosen appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

## B.    Empire Investigates and Adjusts the Claim

Breakwater notified Empire of storm damage to its property on September 19, 2017 [R. 132 (¶5)]. Empire investigated. *Id.* (at ¶6). It also inspected the property [R. 20 (¶14); 62 (¶14)]. Although Empire found some covered damage to some buildings, it did not find exterior or interior damage to all [R. 62 (¶11)]. Empire then made a series of payments totaling about $1.8 million within a few months of the loss [R. 20 (¶14); 62 (¶14); 77-78]. Empire also produced its reports [R. 92]. Throughout 2018, Empire was told by Breakwater's public adjuster that a different

16

quantification of the loss was forthcoming. None came. Instead, Breakwater began

demanding appraisal before presenting Empire with any estimate of the loss [R. 96].

Breakwater finally provided Empire with a sworn proof of loss ("POL") a year

and a half later, on March 7, 2019, *id.*, for $25,289,509.08 in net Replacement Cost

Value ("RCV") benefits after applying deductibles [R. 90]:

| | | |
|---|---|---|
| 6. The full cost of repair or replacement is | .......................................... | $ 27,417,966.00 |
| 7. Applicable depreciation or betterment is | .......................................... | $ N/A |
| 8. Actual cash value loss is (Line 6 minus Line 7) | .................................. | $ 27,417,966.00 |
| 9. Less deductibles and /or participation by the insured | ......................... | $ 2,128,456.92 |
| 10. The Amount Claimed under the above numbered policy is | .................... | $ 25,289,509.08 |

Two days later, Breakwater signed yet another POL, this time adding depreciation

and quantifying Actual Cash Value ("ACV") at a net $21,290,736.10 [R. 390]:

| | | |
|---|---|---|
| 6. The full cost of repair or replacement is | .......................................... | $ 27,417,966.00 |
| 7. Applicable depreciation or betterment is | .......................................... | $ 3,998,772.97 |
| 8. Actual cash value loss is (Line 6 minus Line 7) | .................................. | $ 23,419,193.02 |
| 9. Less deductibles and /or participation by the insured | ......................... | $ 2,128,456.92 |
| 10. The Amount Claimed under the above numbered policy is | .................... | $ 21,290,736.10 |

The $25 million sought in roof, windows, and doors replacements for all

buildings, including matching and code upgrade expenses, and was not based on

actual repairs or amounts spent, but mere estimates [R. 132 (¶¶6-7)]. Empire again

investigated. It even agreed to extend Breakwater's time to complete repairs and

incur Ordinance or Law ("O&L") expenses by 180 days. Despite Empire's request

that permanent repairs take place timely [R. 92], none did [R. 132 (¶¶6-7)].

## C.    Breakwater Sues Empire Mid-Adjustment

Instead, Breakwater sued Empire several months later, in December of 2019.

It sought to appraisal through declaratory judgment and damages for Empire's

alleged failure to appraise and fully indemnify it under the Policy [R. 16, 23-26]. Notably, Breakwater demanded a jury trial of all issues [R. 27]. The Complaint also pled the RCV amount as the damages sought. *See* R. 21 (¶¶ 16-18 (alleging that "actual amount . . . of the . . . losses at issue" was "$25,289,509.08," subsequent POL claimed "$25,289,509.08," and if Empire disagreed with this amount, then it should construe it as a demand for appraisal)).

Empire moved to dismiss the declaratory judgment count [R. 29]. Breakwater withdrew it, keeping only its breach of contract count [R. 43]. Empire responded that the withdrawal put only damages at issue [R. 45], not appraisal. Empire then answered, raising, among other defenses, that neither RCV nor O&L amounts could be owed absent completed and paid-for repairs or incurred expenses; that Breakwater failed to timely perform or pay for the estimated repairs; that any ACV claimed should not improperly contain matching and other costs; and that the Policy excluded coverage for interior water damage [R. 61-70].

Breakwater then moved to compel appraisal [R. 71]. The motion was referred to the Honorable Magistrate [R. 385]. Breakwater reiterated that it sought appraisal of the loss, calculated at "$25,289,509.08" [R. 72]. It asserted that "Empire does not (and cannot) provide any evidence that contradicts" the allegation that Breakwater satisfied all conditions precedent and post-loss duties [R. 74]. Breakwater also alleged that "Empire cannot challenge th[e] Court's inherent authority to refer th[e]

matter to appraisal" [R. 82]. The motion included a list of requests almost identical to those in the count Breakwater withdrew [R. 84-85].

Empire responded in opposition [R. 111]. It argued that Breakwater essentially sought specific performance relief, but failed to make a showing under Fed. R. Civ. P. 65 [R. 116-119]; that the remedy of compelling appraisal was not sufficiently pleaded in Breakwater's complaint, and regardless, summary judgment was necessary to adjudicate a breach justifying the remedy [R. 115-116, 119-120]; that Breakwater waived appraisal by demanding a trial of all issues [R. 126-127]; and that any appraisement of RCV and O&L would be moot [R. 120-126]. Alternatively, Empire asked for an itemized award and discovery [R. 127-128]. Empire also moved for summary judgment on the basis that Breakwater had not paid for completed repairs, nor incurred additional expenses in repairs or replacements, failing to show entitlement to such benefits or even an accrued claim for them [R. 231]. Despite Breakwater's failure to deny the absence of paid-for, completed repairs [R. 348 (n.7), 358], ruling was deferred on Empire's motion [R. 572].

Ultimately, the Honorable Magistrate disagreed with Empire on all points but discovery, granting appraisal [R. 433]. Empire objected to the legal conclusions— and supporting findings—in the order [R. 446]. Breakwater responded, arguing that as a non-dispositive order, the district court should review it for clear error only [R. 465]. Empire replied, reiterating that the Magistrate's ruling afforded specific

performance, a dispositive matter under Fed. R. Civ. P. 72(b) requiring de *novo review* [R. 481]. The District Court overruled Empire's objections [R. 487]. Empire since appealed and, after substantial briefing [R. 499, 532, 553, 563], the District Court agreed to stay the matter pending appeal [R. 575].

**STATEMENT OF THE STANDARD AND SCOPE OF REVIEW**

This Court reviews *de novo* all legal conclusions in the orders[19] compelling appraisal. *See Jacobs v. Nationwide Mut. Fire Ins. Co.*, 236 F.3d 1282, 1285 (11th Cir. 2001). Other circuits agree. *See Fireman's Fund Ins. Co. v. Steele Street Limited II*, 2022 WL 39392, at *5 (10th Cir. Jan. 5, 2022) (reviewing interlocutory order compelling appraisal *de novo*); *Hayes v. Allstate Ins. Co.*, 722 F.2d 1332, 1335 (7th Cir. 1983) (reviewing propriety of interlocutory appraisal order as legal ruling, not discretionary one). *Cf. also Milligan v. CCC Information Services, Inc.*, 920 F.3d 146, 152 (2d Cir. 2019) (reviewing *de novo*); *Nygaard v. Property Damage Appraisers, Inc.*, 779 Fed. App'x 474, 475 (9th Cir. 2019) (same).

Additionally, *de novo* review is appropriate because Empire sufficiently objected to the Honorable Magistrate's order below as one effectively under 28 U.S.C. 636(b)(1)(B) (requiring district court to review *de novo* all portions) and Fed. R. Civ. P. 72(b)(3) (same). *Cf. J.P.F.D. Investment Corporation v. United Specialty Ins. Co.*, 769 Fed. App'x 698, 703 (11th Cir. 2019) (noting that Fed. R. Civ. P. 72(b) applied to preserve *de novo* review district court's order on appraisal objections); *Rodriguez v. Powell,* 853 Fed.App'x 613, 618 (11th Cir. 2021) (explaining that magistrate rulings on dispositive matters are subject to specific objections

---

[19] Both orders—the magistrate and the district court judge's—are before this Court. *See, e.g., Wingerter v. Chester Quarry Co.*, 185 F.3d 657, 661 (7th Cir. 1998).

reviewable *de novo*); *JM Walker LLC v. Acadia Ins. Co.*, 356 Fed. App'x 744, 748 (5th Cir. 2009) (reviewing propriety of appraisal *de novo* despite party's failure to object to magistrate's order).

## SUMMARY OF THE ARGUMENT

**First, a federal district court judge should review a magistrate's appraisal ruling or recommendation *de novo*.** The correct and universal practice in this circuit is to afford *de novo* review to appraisal rulings regardless of their label. This comports with the language of Rule 72(b)(1) and Section 636(b)(1)(B). Yet, the lower court incorrectly reviewed the Honorable Magistrate's order for clear error.

**Second, a federal court should not compel appraisal absent a sufficient showing under Rule 65.** Florida law deems the right to compel appraisal one for specific performance. Federal courts may only exercise Rule 65 powers in affording such relief. Here, the lower court incorrectly affirmed that it could compel appraisal as something *other than* specific performance, without pleading or other requirements governing contractual remedies.

**Third, a federal court should not compel appraisal without adjudicating the breach of the provision through summary judgment.** The specific performance of a contract is a remedy that presupposes its sufficient pleading and a party's breach of the provision. Courts may neither grant unpled or insufficiently pled relief nor grant it without adjudicating a breach. Here, the lower court did both.

**Fourth, a federal court should not compel appraisal where the moving party unequivocally demands a jury trial of all issues and fails to exclude the amount of loss under Rule 38(c).** Florida's common law deems the amount of loss

a triable issue if waived. Breakwater requested a jury trial of all issues under Florida law. Empire did as well. Breakwater then withdrew its only count expressly seeking appraisal. Yet, the lower court compelled appraisal over Empire's objection that Breakwater improperly sought to modify its jury trial demand under Rule 38(c).

**Lastly, a federal court should not compel appraisal of RCV or O&L benefits, where the amounts claimed are not for completed, paid-for repairs, or incurred expenses.** Under the Policy, RCV and O&L benefits are in the nature of reimbursement. Empire does not owe such benefits until and unless the claimed repairs or replacements have been completed. Nor could it owe more than the amount actually spent on such work. Breakwater claims reimbursement for $27.5 million it has neither alleged nor shown spent on completed repairs. Appraising RCV and O&L is a moot exercise, where such benefits have never been incurred and triggered. Thus, the lower court erroneously compelled appraisal.

**ARGUMENT**

## I.  The District Court Failed to Review *de novo* the Magistrate's Ruling Despite that Ruling's Consideration of a Dispositive Matter

The court should have reviewed the Honorable Magistrate's ruling *de novo*, not for clear error [R. 487, 490]. This Court routinely scrutinizes "whether [a] district court conducted the proper de novo review of [a] magistrate's report." *Jeffrey S. by Ernest S. v. State Bd. Of Educ. Of State of Ga.,* 896 F.2d 507, 511 (11th Cir. 1990). Under *de novo* review, Empire should have prevailed below.

First, the court was "obligated to make a *de novo* review of . . . those factual findings and legal conclusions that are the subject of objections" in a ruling "compelling appraisal." *Calzadilla v. Scottsdale Ins. Co.,* No. 18-25424, 2019 WL 2245518, at *5 (S.D. Fla. April 10, 2019). The practice is universal in this circuit.[20] And for good reason. Such ruling passes on a "matter dispositive of a claim or

---

[20] *See also Baldwin Realty Group Inc. v. Scottsdale Ins. Co.*, No. 6:18-cv-785-Or1-41DCI, 2018 WL 5221228, at *1 (M.D. Fla. Oct. 22, 2018) (adopting magistrate's ruling on appraisal only "[a]fter a de novo review of the record"); *Castillo at Tiburon Condominium Ass'n, Inc. v. Empire Indemnity Ins. Co.,* No. 2:20-cv-468, 2021 WL 4438370, at *2 (M.D. Fla. Sept. 28, 2021) (same); *Coral Reef Metro, LLC v. Scottsdale Ins. Co.,* 2019 WL 700114, at *1 (M.D. Fla. Feb. 20, 2019) (same); *Waterford Condominium Ass'n of Collier County, Inc.,* 2019 WL 3852731, at *1 (same); *Michelle Condominium, Inc. v. Certain Underwriters at Lloyd's, London,* 2021 WL 4244899, at *1 (S.D. Fla. Sept. 17, 2021) (same); *SB Holdings I, LLC v. Indian Harbor Ins. Co.*, No. 6:19-cv-668-Or1-40DCI, 2020 WL 1674326, at *1 (M.D. Fla. Jan. 9, 2020) (same); *Metropolitan Casualty Ins. Co. v. SFR Services L.L.C.,* 2020 WL 4207375, at *1 (M.D. Fla. July 22, 2020) (same); *Bettor v. Esurance Property and Casualty Ins. Co.*, No.: 18-61860-CIV-MORENO, 2019 WL 3408900, at *1 (S.D. Fla. June 17, 2019) (same).

defense." Rule 72(b)(1). *See also* 28 U.S.C. §636(b)(1)(B); *J.P.F.D. Investment Corporation v.,* 769 Fed. App'x at 703 (same).

Here, it was not clear whether the lower court's referral of the matter traveled under 72(b) or 72(a) [R. 404]. Construing the ruling as a Rule 72(a) order merely because it styled itself "order" conflates the substance and meaning of the words "order" and "report" under Rule 72. Substance matters, not labels. The ruling granted relief that Breakwater referenced—albeit insufficiently—in its complaint [R. 19-26 (¶¶9, 17-20, 41-42 (seeking any "relief that this Court deems . . . appropriate" for Empire's breach of the appraisal provision by failing to participate))].[21]

"Specific performance . . . is a remedy for breach." *Hendershott v. Ostuw*, No. 20-cv-80006, 2020 WL 6305105, at *3 (S.D. Fla. Oct. 14, 2020). Breakwater's Complaint need not have expressly used the words "specific performance" for its appraisal motion to be construed as seeking it. *See Biscayne Cove Condo. Ass'n, Inc.*, 2013 WL 2646828, at *3 (count seeking appraisal essentially sought specific performance despite lack of reference).[22] Likewise, the ruling need not be labelled a "report," nor the matter expressly referred to the Magistrate under Rule 72(b).

---

[21] *See also* R. 24-25 (¶37 (seeking order compelling appraisal in declaratory judgment count); 43(withdrawing same count)].

[22] *See also Residences at European Village Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, No. 3:19-cv-1490, 2020 WL 5948314, at *4 (M.D. Fla. July 17, 2020) (same);

Any relief, including appraisal, logically depends on Breakwater's remaining breach of contract count. *Cf. Anoushfar v. Lexington Ins. Co.*, No. 21-11244, 2021 WL 4848073, at *3, *7 (11th Cir. Oct. 18, 2021) (affirming lower court's determination that "specific-performance claims . . . depend[ed] on [the] breach-of-contract theory"). The court conceded as much below [R. 492 (stating that "parties can seek appraisal through breach of contract . . . actions")]. Thus, the Magistrate's ruling falls under Rule 72(b).

Second, *de novo* review is required despite opposite, unpersuasive authority. The court erroneously relied on two cases: *PowerShare, Inc. v. Syntel, Inc.,* 597 F.3d 10 (1st Cir. 2010), and *PB Property Holdings, LLC v. Auto-Owners Ins. Co.,* No. 16-cv-1748, 2017 WL 7726696, at *1 (D. Colo. Jan. 26, 2017) [R. 490]. But *PowerShare* addressed an order involving arbitration, not appraisal. *PowerShare, Inc.,* 597 F.3d at 14. And it did not address whether Rule P. 72(a) rather than 72(b) applies to a magistrate's appraisal ruling.

*PB Property* is no less distinguishable. It involved parties who "agreed" that the magistrate's ruling was non-dispositive and "properly reviewable under Rule 72(a)" for clear error. *PB Property Holdings, LLC,* 2017 WL 7726696, at *1. Yet,

---

*Parkway Baptist Church, Inc. v. Guideone Elite Ins. Co.*, No. 10-23965, 2011 WL 13099891, at *3 (S.D. Fla. Sept. 11, 2011) (same); *Creekside Crossing Condo. Ass'n, Inc. v. Empire Indent. Ins. Co.*, No. 2:20-cv-136, 2020 WL 1904011, at *1 (M.D. Fla. Apr. 17, 2020) (same).

courts in this circuit have correctly refused to apply the "clearly erroneous" standard of Rule 72(a) to a magistrate's ruling merely because the parties "agree." *See Shands Jacksonville Med. Ctr., Inc. v. Nat'l Union Fire Ins. Co.*, No. 3:14-cv-930, 2015 WL 5714870, at *3 (M.D. Fla. Sept. 22, 2015) (reviewing stay order *de novo* under Rule 72(b)).

*PB Property* is also unpersuasive. The court reasoned that, since appraisal did not dispose of the "merits" of entitlement to the amount of loss, it was not dispositive under Rule 72. *PB Property Holdings, LLC,* 2017 WL 7726696, at *1. But the meaning of "dispositive" as to liability on the amount owed is different from the broader meaning of "dispositive" under of Rule 72. The only authority relied on does not address this question. *Id.* Rather, that same authority also explains that "[a] policy's requirement for an appraisal of a loss may be *specifically enforced*."16 COUCH ON INSURANCE § 232:170 (3d ed., 2021 update) (emphasis added). And entitlement to such relief *is* a dispositive matter.

The court below has elsewhere reviewed *de novo* a magistrate's ruling on appraisal *despite* deeming the motion non-dispositive. *See Waterford Condominium Ass'n of Collier County, Inc,* 2019 WL 3852731, at *1-*2. Other federal courts agree with Empire. *See, e.g., State Farm Fire & Cas. Co. v. Harper*, No. 3:20-cv-00856, 2022 WL 989088, at *2-*3 (M.D. Tenn. Mar. 31, 2022) (reviewing self-styed non-

dispositive appraisal order *de novo* because motion required specific performance and policy interpretation). Respectfully, the court below erred.

## II.    Compelling Appraisal without a Showing of Specific Performance under Rule 65 was Procedurally Improper

Breakwater should have sufficiently alleged and proven entitlement to specific performance under Rule 65. It did not. Breakwater had even withdrawn the sole count expressly seeking it. Yet, the court upheld the Magistrate's conclusion that "[n]either the parties nor the court need to be burdened with such [pleading and proof] here, and Breakwater's motion is procedurally proper" [R. 440; 494]. This amounted to reversible error.

First, there is no question that the "right to compel appraisal" constitutes "a claim for specific performance of policy obligations" under Florida law. *Nowroozpour*, 277 So. 3d at 136. *See also People's Tr. Ins. Co. v. Vidal*, 305 So. 3d 710, 715 (Fla. 3d DCA 2020) (same).[23] Compelling appraisal constitutes a remedy that must be pleaded or waived. *See People's Trust Ins. Co. v. Fernandez*, 317 So. 3d 207, 211 (Fla. 3d DCA 2021) (referring to appraisal as a "remedy . . . [that]

---

[23] *Cf. also Twelfth Ave. Investments, Inc. v. Smith*, 979 So. 2d 1216, 1220 (Fla. 4th DCA 2008) (appraisement of value in real estate purchase option constituted specific performance); Jason Kirwan, *Appraising A Presumption: A Modern Look at the Doctrine of Specific Performance In Real Estate Contracts*, 47 WM. & MARY L. REV. 697, 701 (2005) ("A party who . . . seeks specific performance of a nonland contract faces an uphill battle in American courts . . . [given] the presumption in favor of money damages[.]").

upholds the terms of the policy"); *Vidal*, 305 So. 3d at 715 (insurer sufficiently

invoked appraisal in counterclaims).[24]

This Court has noted as much. *See, e.g., Anoushfar*, 2021 WL 4848073, at *7

(concluding that insured "s[ought] specific performance in the form of an order

compelling . . . appraisal"). District courts in this circuit agree that compelling

appraisal constitutes specific performance *even if* not expressly sought as such. *See*

*Biscayne Cove Condo. Ass'n, Inc.*, 2013 WL 2646828, at *3.[25] So too federal courts

elsewhere. *See Vista Pointe Townhome Ass'n Inc. v. Auto-Owners Ins. Co.*, No. 16-

cv-0973, 2018 WL 1773407, at *6 (D. Colo. April 13, 2018) (request to compel

appraisal essentially one for specific performance).[26] Even scholarship concurs. *See*

---

[24] Breakwater conceded it is a "contractual remedy" below [R. 67]. *Cf. Ruckdeschel v. People's Trust Ins. Co.*, 327 So. 3d 311, 314 (Fla. 4th DCA 2021) (reversing grant of motion to compel repairs where insurer never pleaded in answer or counterclaim a request of specific performance of its option to repair); *Todd v. Hyzer*, 18 So. 888, 890 (Fla. 1944) ("Even where the terms of the contract are clear . . . specific performance is not a matter of right, but . . . determined from all the facts and circumstances.").

[25] *See also Residences at European Village Condo. Ass'n, Inc.*, 2020 WL 5948314, at *4 (same); *Parkway Baptist Church, Inc.*, 2011 WL 13099891, at *3 (same); *Creekside Crossing Condo. Ass'n, Inc.*, 2020 WL 1904011, at *1 (same); *La Gorge Palace Condo Ass'n, Inc. v. QBE Ins. Corp.*, 733 F.Supp.2d 1332, 1334 (S.D. Fla. 2010) (denying appraisal for failure to plead and prove specific performance); *Saltponds Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, No. 20-CV-10063-JEM, 2020 WL 6875747, at *2 (S.D. Fla. Oct. 26, 2020) (dismissing count seeking specific performance of appraisal where coverage denied).

[26] *See also McCoy v. American Family Mut. Ins. Co.*, 189 F.Supp.3d 896, 900 (D. Minn. 2016) (motion to compel appraisal seeks specific performance despite parties'

16 COUCH ON INSURANCE § 232:170 (3d ed., 2021) ("A policy's requirement for an appraisal of a loss may be specifically enforced.").[27]

Second, it is equally uncontroversial that a federal court's equity jurisdiction to grant specific performance, embodied by Rule 65, requires a showing of injunctive relief. *Compare Ferrero*, 923 F.2d at 1448 (federal "equity jurisdiction" incorporated by Rule 65), *with Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1223, 1225 (10th Cir. 2009) ("Specific performance is an equitable remedy, and an interim

---

failure to characterize it as such); *Woodward v. Liberty Mut. Ins. Co.*, No. 3:09-cv-0228, 2010 WL 1186323, at *3 (N.D. Tex. Mar. 26, 2010) (motion to compel appraisal enforces appraisal clause through specific performance); *St. Panteleimon Russian Orthodox Church v. Church Mut. Ins. Co.*, No. 13-1977, 2013 WL 6190400, at *3 (D. Minn. 2016) (motion to compel appraisal essentially a motion seeking specific performance order); *Sauer v. Xerox Corp.*, 17 F.Supp.2d 193, 201 (W.D. N.Y. 1988) (describing judicial enforcement of appraisals as common law power to "order specific performance of an appraisal"); *Mapleton Processing, Inc.*, 2013 WL 3467190, at *24 (denying appraisal because insured failed to plead and make a showing for specific performance or injunction); *Battles, Inc.*, 2020 WL 6365513, at *4-*5 (same).

[27] *See also* Sturges, *supra* at 2 (explaining that "enforcement" of appraisal agreements "suggests, of course, specific performance of the provision" through a suit "to obtain a[n] . . . injunctional order that the non-complying party proceed with appraisal," to force the appointment of appraisers or umpires, or for damages); Hayes, *supra* at 225; Simpson, *supra* at 160-161; Amy Schmitz, *Ending A Mud Bowl: Defining Arbitration's Finality Through Functional Analysis*, 37 GA. L. REV. 123, 169 (2002) ("Under contract law, courts may enforce valid appraisal agreements and determinations by ordering damages, specific performance, or other contract remedies."); Law & Starinovich, *What Is It Worth? A Critical Analysis of Insurance Appraisal*, *supra* at 315-16 (compelling appraisal involves preliminary injunction).

grant of specific relief is a preliminary injunction.").[28] Breakwater did not move or make any showing under the Rule.

This explains why, for purposes of Section 1292(a)(1), courts look to whether the specific performance order "is injunctive in character" under Rule 65. *See Supreme Fuels Trading FZE v. Sargeant*, 689 F.3d 1244, 1246 (11th Cir. 2012) (Pryor, C.J., concurring) (quoting *Petrello v. White*, 533 F.3d 110, 114 (2d Cir. 2008)). It also explains why two other circuits deem orders compelling appraisal injunctive under Section 1292(a)(1). *See Steele Street Limited II*, 2022 WL 39392, at *5 (holding order "requir[ing] . . . adher[ance] to the Policy's Appraisal Provision . . . substantively an injunctive order"); *Hayes*, 722 F.2d at 1335 (same). Yet, the lower court refused to hold Breakwater to the strictures of Rule 65.

Third, the reasons proffered by the district court for its refusal are neither correct nor persuasive. For example, it concluded that Breakwater did not need to plead or move for specific performance because "['a separate motion to compel appraisal,' like the one Breakwater filed" was enough [R. 492 (citing *Creekside Crossing Condo. Ass'n, Inc.*, 2021 WL 2003007, at *1)]. But *Creekside* does not provide a rationale or rely on authority. *Cf. Calzadilla*, 2019 WL 22455518, at *4

---

[28] *See also* Stephen N. Subrin, *How Equity Conquered Common Law: The Federal Rules of Civil Procedure in Historical Perspective*, 135 U. PENN. L. R. 909, 920 (1987) (specific performance incorporated by Rule 65); *PASI of LA, Inc.*, 334 F.Supp.3d at 799 ("[T]he Court cannot enforce state law allowing specific performance absent proof of . . . Rule 65's requirements.").

(court action taken "without analysis" "is not persuasive").[29] And its action is irrelevant to the question of whether compelling appraisal requires a showing under Rule 65, an issue separate from whether it *also* requires summary judgment.

The lower court's conclusion that a "motion" "separate" from specific performance suffices to compel appraisal may ultimately derive from *Nowroozpour*. There, the panel noted, in *dicta*, that "it may [still] be more traditional" for a party to merely "move to compel an appraisal to seek enforcement of the policy provisions." 277 So. 3d at 136. As discussed above, this was not part of its holding. *Cf. Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U.S. 701, 737 (2007) (courts "not bound to follow . . . dicta in a prior case in which the point now at issue was not fully debated"). Nor is it clear that the "separate" motion

---

[29] *See also Battles, Inc.*, 2020 WL 6365513, at *5 (denying appraisal while sitting in diversity jurisdiction and explaining that, although "Plaintiff cites several cases, arguing that motions to compel the appraisal process are regularly considered by courts . . . [t]hese cases, however, do not discuss the proper procedure to bring such motions"); *Mapleton Processing, Inc.*, 2013 WL 3467190, at *24 ("While arguing that the Policy creates a right of appraisal, [the insured] does not address the question of why I should, or even could, compel appraisal in the middle of a pending lawsuit that does not involve a request for such relief. A court can compel parties to comply with their discovery obligations. Appraisal, however, is a right created by contract, not a discovery procedure. I am far from convinced that it would be appropriate for me to enter a pre-trial order requiring specific performance under a contract when no such claim is pending."); *Vista Pointe Townhome Ass'n Inc.*, 2018 WL 1773407, at *6 n.5 ("The Court notes that, to the extent it would grant specific performance of the Appraisal clause . . . [t]his Court has profound doubts that it would possess jurisdiction to select an umpire simply because the parties disagree. As noted above, parties may not create federal jurisdiction simply be agreeing that it should exist.").

alluded to is one still seeking an injunction. At any rate, the statement is not borne by Florida common law.

Critically, the assertion has no bearing on the scope of Rule 65. Whatever the recent traditions of Florida courts of *general* jurisdiction, this issue turns on a question of procedure among federal courts of *limited* jurisdiction. "In [a] diversity case," federal courts "apply federal procedural law and state substantive law." *J.P.F.D. Investment Corporation,* 769 Fed. App'x at 702 n.3.[30]

Another reason underlying the court's refusal below was that, despite *Suarez*, "'[a]ppraisal clauses are [still] treated similarly to arbitrations'" [R. 493 (citing, among other cases, *Three Palms Pointe, Inc.*, 250 F.Supp.2d at 1362)]. But this misses the point of Empire's objection: not only is this a matter of federal procedure, but even if Florida law controlled, no aspect of appraisals travels under its Arbitration Code. To the extent that this Court must "make an *Erie* guess that the Florida Supreme Court would not apply [a] statute" like the Arbitration Code in these circumstances, *cf. McMahan v. Toto*, 311 F.3d 1077, 1080 (11th Cir. 2002), it

---

[30] *See also Vista Pointe Townhome Ass'n Inc.*, 2018 WL 1773407, at *6 n.5 (refusing to compel appraisal on similar grounds); *Battles, Inc.*, 2020 WL 6365513, at *4-*5 (denying appraisal because diversity jurisdiction required application of federal procedural law and movant failed to make sufficient showing of specific performance, despite fact that "motions to compel appraisal are regularly considered by courts," since "[t]hese cases . . . do not discuss the proper procedure to bring such motions"); *Mapleton Processing, Inc.*, 2013 WL 3467190, at *24 (expressing similar concerns).

has long ago done so in *Southern Flapjacks*. *See Columbia Cas. Co. v. Southern Flapjacks, Inc.*, 868 F.2d 1217, 1223 (11th Cir. 1989) ("The Florida Arbitration Code applies only to arbitration agreements, not to appraisals.").[31] Since then, Florida precedent has only further validated *Southern Flapjacks*.

*Suarez* "held that the Florida Arbitration Code is not applicable to appraisal cases." *Citizens Prop. Ins. Corp. v. Cuban-Hebrew Congregation of Miami, Inc.*, 5 So. 3d 709, 712 (Fla. 3d DCA 2009). Since *Suarez*, Florida's appellate courts have continued to curb all reliance on the Code in enforcing appraisals. *See State Farm Fla. Ins. Co. v. Gonzalez*, 76 So. 3d 34, 37 (Fla. 3d DCA 2011) (rejecting "petition to confirm" appraisal award as if it were an arbitration award, and requiring suit for breach of contract instead) (*citing Florida Insurance Guaranty Ass'n v. Olympus Ass'n*, 34 So.3d 791 (Fla. 4th DCA 2010)); *Citizens Prop. Ins. Corp. v. Mango Hill #6 Condo. Ass'n, Inc.*, 117 So. 3d 1226, 1230 (Fla. 3d DCA 2013) (reversing "confirmation" of appraisal award because "[t]he Florida Arbitration Code is not applicable to appraisal awards"); *Cuban-Hebrew Congregation of Miami, Inc.*, 5 So. 3d at 712 (reversing trial court's refusal, based on Arbitration Code, to apply deductibles and prior payments to appraisal award).

---

[31] Early precedent elsewhere deemed appraisals outside the scope of arbitration statutes. *See, e.g., City of Omaha v. Omaha Water Co.*, 218 U.S. 180, 192-99 (1910) (holding appraisal was not an arbitration); *Collins v. Collins*, 53 Eng. Rep. 916, 919 (1858) (same).

Writing for the majority in an opinion before his ascension, Justice Canady expressly disapproved of *Three Palms Pointe* as "misinterpret[ing] the holding of *Licea*" in refusing to allow the insurer to challenge coverage for elements of the loss after appraisal. *Kennedy*, 890 So. 2d at 541. Except for the First District Court of Appeal—still silent on the issue—every other district agrees with *Kennedy*. *See American Capital Assurance Corp. v. Leeward Bay at Tarpon Bay Condo. Ass'n, Inc.*, 306 So. 3d 1238, 1243 (Fla. 2d DCA 2020); *Williams v. Citizen Prop. Ins. Co.*, 285 So. 3d 334, 335 (Fla. 4th DCA 2019); *Safepoint Ins. Co. v. Hallet*, No. 5D20-206, 2021 WL 2599656, at *2 (Fla. 5th DCA, June 25, 2021); *Olympus Ass'n*, 34 So. 3d 791; *Mango Hill #6 Condo. Ass'n, Inc.*, 117 So. 3d at 1229. So do most district court members in this circuit.[32]

Although this Court "write[s] in . . . disappearing ink" on this issue, *McMahan*, 311 F.3d at 1079, the writing is on the wall as to Florida's clear trend away from applying or analogizing the Arbitration Code to appraisals: "the analogy

---

[32] Although "federal district courts have divided as to whether . . . to follow *Three Palms Pointe* or . . . *Kennedy*," *Fouladi v. Geovera Specialty Ins. Co.*, No. 6:18-cv-326-Orl-40KRS, 2018 WL 3761039, at *6 n.4 (M.D. Fla. April 30, 2018), a growing majority of cases in this Circuit *expressly* side with *Kennedy*. *See Fla. Gaming Corp. v. Affiliated FM Ins. Co.*, No. 07-20897-Civ-Ungaro, 2008 WL 11407210, at *1 n.1 (S.D. Fla. Apr. 21, 2008); *Sands on the Ocean Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 05-14362-Civ, 2009 WL 790120, at *2-*3 (S.D. Fla. Mar. 24, 2009); *Jin Zhi Star Lt. LLC v. American Zurich Ins. Co.*, No. 08-61101-Civ-Moreno/Torres, 2011 WL 13110260, at *3-*4 (S.D. Fla. June 16, 2011); *Grove Towers Condo. Ass'n, Inc. v. Lexington Ins. Co.*, No. 19-24199-Civ-Cooke/Goodman, 2020 WL 4561599, at *4 (S.D. Fla. June 9, 2020).

[to the Code] [i]s misplaced." *Cuban-Hebrew Congregation of Miami, Inc.*, 5 So. 3d at 712. Analogy is a tool of reasoning, not a source of power. An Article III court cannot exercise Rule 65 powers outside its bounds anchored in mere reasoning.

The lower court also suggested that *Red Cross Line*, cited by Empire, supported compelling appraisal here [R. 494]. This is incorrect. As explained above, *Red Cross Line* referred to the potential enforcement of appraisal through specific performance. 264 U.S. at 118-119, 121. But courts seldom did. Instead, they deemed a suit for breach of contract damages an adequate and available remedy. *See Forbes*, 70 F.Supp.2d at 343 (courts did not often grant specific performance of appraisal given high burden).[33]

This understanding explains why courts in this circuit often dismiss counts seeking to compel appraisal for failure to sufficiently allege that an adequate remedy at law does not exist. *See, e.g., Parkway Baptist Church, Inc.*, 2011 WL 13099891, at *3. It also explains why, in Florida, the amount of loss has been a triable issue

---

[33] *See also Saba*, 159 Ohio St. at 248-249 (Hart, J., dissenting) (explaining common law refusal to specifically enforce appraisal); *Hepburn et al.*, 5 Cranch at 279 (specific performance a departure from common law); *Specific Performance of Contracts Containing A Provision to Arbitrate*, 31 Y.L.J. 670, 670-671 (1922) ("Equity will usually not grant specific performance of contracts for valuation or arbitration, even though the legal remedy is inadequate . . . . But exceptions to this rule are recognized.") (citing Fry, Specific Performance (4th ed. 1903) sec. 356; 5 Pomeroy, Equity Jurisprudence (4th ed. 1919) sec. 2180; Hayes, *Specific Performance of Contracts for Arbitration or Valuation* 1 Corn. L. Quart. 225 (1916)).

despite the existence of an appraisal provision or even an award. *Cf. Lewis*, 10 So. at 302-303. The Florida Supreme Court "does not intentionally overrule itself sub silentio." *Puryear v. State*, 810 So. 2d 901, 905 (Fla. 2002). And mere passage of time does not render precedent any less instructive or binding.[34] The lower court's observation that no Eleventh Circuit or Florida appellate opinion exists on this issue of first impression [R. 492] is insufficient.[35]

Lastly, the lower court's novel practice has absurd and unfair consequences. In affording the same relief of compelling appraisal whether Breakwater chose to plead it as specific performance or not, the court effectively allowed Breakwater to *choose* between a higher and lower burden of proof to obtain the *same* thing. Nothing comparable is done in other legal contexts, let alone cases involving specific performance. This procedural carve-out in insurance suits affords Breakwater an

---

[34] In Texas, for example, the Supreme Court only reviewed five appraisal cases between 1888 and 2009. *See* Ticer et al., *Appraisal in the New World Order*, *supra* at 1-2. Any desired change in the common law of appraisals—or specific performance—should be addressed by the Legislature, as it has been in every other state where a statutory motion to compel appraisal abrogated earlier common law.

[35] Should any aspect of this issue turn on a question of Florida law, Empire respectfully requests this Court to certify it to the Florida Supreme Court, given its state and circuit-wide impact. *See, e.g., Anderson v. Auto-Owners Ins. Co.*, 172 F.3d 767 (11th Cir. 1999) (certifying question involving insurance policy), *certified question answered by Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29 (Fla. 2000); *Sun Ins. Office, Ltd. v. Clay*, 133 So. 2d 735, 742 (Fla. 1961)("It is now well established procedure for a federal court to abstain from deciding the merits of a case so as to afford the state courts a reasonable opportunity to construe a state statute involved in the case.").

easier process, parallel to the much harder specific performance procedure required. The fact that Florida courts may do this does not justify importing that practice contrary to Rule 65. *Cf., e.g., MaxLite, Inc. v. ATG Electronics, Inc.*, No. 15-1116, 2019 WL 3283077, at *3 (D. N.J. July 22, 2019) (refusing to enact "parallel procedure" tracking state "summary action" practice and instead evaluating preliminary injunction claim to compel payment of fees through Rule 56).

If a pleading or motion seeking to compel appraisal do not involve federal equity jurisdiction under Rule 65, or specific performance under Florida law, despite the labels used, then Empire is unsure of what kind of relief or process is involved. Similarly situated parties—including insureds against whom appraisal is often sought—are no less uncertain. Just what power are Article III courts exercising when they mirror Florida state courts in granting these mere "motions to compel"?

Proper federal procedure in compelling appraisals should require satisfaction of Rule 65 and a district court's exercise of discretion in weighing the factors and tailoring any relief granted. *Cf.* Sturges, *supra* at 3 n.6 (recognizing courts must weigh injunctive factors and exercise discretion in compelling appraisal).[36] Any

---

[36] *See also* Amy Schmitz, *Refreshing Contractual Analysis of ADR Agreements by Curing Bipolar Avoidance of Modern Common Law*, 9 HARV. NEGOT. L. REV. 1, 2, 4 n.22 (2004) (arguing courts should not automatically compel specific performance of extra-judicial resolution agreements without balancing equitable factors and exercising discretion); *Georgia Advocacy Office v. Jackson*, 4 F.4th 1200, 1208 (11th Cir. 2021) (Rule 65 allows for tailoring of injunction); Samuel Bray, *The System of Equitable Remedies*, 63 UCLA L. REV. 530, 557 (2016) (noting that under

conflict between Florida law and Rule 65 would be resolved in favor of the latter. *See Blue-Grace Logistics LLC v. Fahey*, 340 F.R.D. 460, 466 (M.D. Fla. 2022). A concise blueprint of what appraisal litigation should procedurally look like may assist the Court.[37]

### III. Compelling Appraisal Absent Summary Judgment that Empire Breached the Provision Constituted a Grant of Unpled Relief Redressing an Un-adjudicated Wrong

The court failed to require Breakwater to show entitlement to the remedy of compelling appraisal through summary judgment. In the absence of an adjudicated breach, Empire should not have been forced to perform on the contract.

---

Rule 65 "court is not limited to saying merely 'perform the contract', and it may impose further conditions . . . as needed").

[37] Ordinarily, compelling appraisal should be sufficiently pleaded as specific performance and the amount of loss be excepted from any jury demand under Rule 38(c). This allows the insurer to raise equitable and other defenses. A motion to compel appraisal should require a showing under Rule 65. As argued below, it should also seek summary judgment on that relief as pleaded. The movant must meet the high burden for specific performance before appraisal can be ordered. If any award is not paid, then the movant (often the insured) may file a supplemental pleading alleging that the non-movant (often the insurer) has breached the policy by failing to make payment. *Cf. J.P.F.D. Investment Corp.*, 769 Fed. App'x at 705-706 ("If the parties cannot agree on the covered loss amount, they must undergo the contractual appraisal before [the insurer's] obligation to pay . . . ripens."). The parties may then continue litigation of coverage post-appraisal, as required by *Kennedy*. And the movant may even seek summary judgment on the amount owed, if coverage is undisputed, as required by *Mango Hill #6 Condo. Ass'n, Inc*. This represents what the ordinary course of appraisal litigation should look like, and respects the existing procedural rules applicable to any claim for relief.

First, "[s]pecific performance . . . is a remedy for breach." *Ostuw*, 2020 WL 6305105, at *3. This entails "a cause of action which requires proof the contract was breached.'" *Macom Technology Solutions Holdings, Inc. v. Ifineon Technologies AG*, 881 F.3d 1323, 1332 (Fed. Cir. 2018) (citation omitted). *Cf. also Anoushfar*, 2021 WL 4848073, at *3, *7 (specific performance claim logically depends on breach of contract count). Appraisal is often sought through summary judgment. *See, e.g., Jacobs*, 236 F.3d at 1285 (reviewing summary judgment order compelling appraisal).[38] Thus, Breakwater was required to defeat Empire's defenses. *See Stillman v. Travelers Ins. Co.*, 88 F.3d 911, 914 (11th Cir. 1996).[39] Yet, it failed to do any of this and obtain summary judgment in compelling appraisal.

Second, "[a]lthough" Breakwater's motion "was styled as a motion to compel arbitration . . . it is essentially a motion for summary judgment." *J.W. Mariner Corp. v. Zurich American Ins. Co.*, No. 5:20-cv-143, 2021 WL 4958099, at *1 n.1 (N.D. Fla. July 7, 2021). *See also Great Lakes Ins. SE v. Concourse Plaza, A Condo. Ass'n,*

---

[38] *See also Pernas v. Scottsdale Ins. Co.*, No. 1:15-cv-21506, 2016 WL 471949, at *2 (S.D. Fla. Feb. 8, 2016); *Cypress Chase Condo. Ass'n A v. QBE Ins. Corp.*, No. 10-61987, 2013 WL 1191413, at *2-*3 (S.D. Fla. Mar. 22, 2013); *People's Trust Ins. Co. v. Slavin*, No. 4D21-3025, 2022 WL 1021043, at *1 (Fla. 4th DCA April 6, 2022).

[39] *Cf., e.g., Allegro at Boynton Beach, L.L.C. v. Pearson*, 287 So. 3d 592, 602 (Fla. 4th DCA 2019) (Warner, J., dissenting) (explaining that, although plaintiff stated elements of specific performance, it "was not entitled to summary judgment . . . because it did not negate all of the affirmative defenses of [defendant]").

41

*Inc.*, No. 21-cv-21873, 2022 WL 1681883, at *3 (S.D. Fla. May 26, 2022) (treating motion to compel appraisal as one for summary judgment, since it "will dispose of" entitlement to appraisal and defendant's counterclaim seeking it).[40] Federal courts elsewhere agree. *See, e.g., McCoy*, 189 F.Supp.3d at 900 (explaining that motion to compel appraisal "seek[s] partial summary judgment on . . . claim that [insurer] has breached the Policy by refusing to participate in the appraisal process").[41]

Third, the lower court's reasons for refusing to require summary judgment are unpersuasive. For example, it noted that Empire's argument was previously rejected by other members of the court [R. 492 n.6 (citing, among other cases, *Waterford Condo. Ass'n of Collier Cty., Inc.*, 2019 WL 3852731, at *2)]. But neither *Waterford* nor the other district court rulings relied on are persuasive.[42]

---

[40] See also *Indian Harbor Insurance Company v. International Studio Apartments, Inc.*, No. 09-60671-CIV-ALTONAGA/Brown, 2009 WL 10668754, at *3 (S.D. Fla. Sept. 22, 2009) (treating motion to compel appraisal as one for summary judgment); *Palmer v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, No. 13-80741, 2014 WL 12461372, at *5 (S.D. Fla. Nov. 7, 2014) ("Plaintiff's Motion to Compel . . . Appraisal . . . is essentially [its] own motion for summary judgment on this issue.").

[41] *See also St. Panteleimon Russian Orthodox Church*, 2013 WL 6190400, at *3 (motion seeking appraisal functionally summary judgment motion seeking specific performance); *Battles, Inc.*, 2020 WL 6365513, at *4-*5 (court "declin[ing] to exercise its power [to grant a motion to compel appraisal] without a motion for summary judgment or an adjudication on the merits"); *Mapleton Processing, Inc.*, 2013 WL 3467190, at *24 (same); *Battles, Inc.*, 2020 WL 6365513, at *5 (same).

[42] Empire has appealed many of those cases recently rejecting its argument, all citing as sole support the lower court's order below appealed in this case. *See, e.g., Creekside Crossing Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-136,

In *Waterford*, the court acknowledged that, where "[o]ne of the counts . . . [is] a demand for appraisal," courts have "treated a motion to compel appraisal as a request for summary judgment on that claim." 2019 WL 3852731, at *2 (citing *Int'l Studio Apartments, Inc.*, 2009 WL 10668574, at *3). Well, here, Breakwater's Complaint seeks relief compelling appraisal, albeit insufficiently, having pleaded it in its withdrawn declaratory judgment count [R. 24-25 (¶37 (seeking order compelling appraisal in declaratory judgment count))], as well as in its remaining breach of contract count [R. 19, 21-22, 26 (¶¶9, 17-20, 41-42 (seeking any "relief that this Court deems . . . appropriate" for alleging Empire's breach of the appraisal provision by failing to participate))]. The rationale of *Int'l Studio Apartments* applied under these facts. And the court failed to analyze the sufficiency of the pleading.

Regardless, *Waterford* incorrectly reasoned that what determines if summary judgment is necessary to compel appraisal is whether appraisal will decide if the amount appraised is owed. 2019 WL 3852731, at *2. Rather, what determines whether summary judgment is required is whether the movant is seeking an adjudication—partial or not—of a claim, defense, or affirmative relief that is a component of either. Fed. R. Civ. P. 56(a). If the amount of loss, once calculated by

---

2022 WL 780950, at *2 (M.D. Fla. Mar. 15, 2022); *Positano Place at Naples III Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-cv-183, 2022 WL 714810, at *2 (M.D. Fla. Mar. 10, 2022).

appraisers, may be the subject of a partial summary judgment,[43] why is entitlement to compelling that calculation not also appropriate for summary judgment? If this Court concludes that Breakwater did not seek or frame the relief of appraisal in its Complaint, then Empire's situation is all the worse: the court granted unpled relief to redress an un-adjudicated breach.

## IV.    The District Court Failed to Conclude that Breakwater Waived Appraisal by Demanding a Jury Trial of All Issues

The lower court should have concluded that Breakwater waived its right to appraisal by demanding a jury trial of all issues. Instead, it disregarded Empire's objection, relying on distinguishable authorities [R. 495].

First, under Florida law, "[a] waiver of . . . appraisal occurs when the party seeking [it] . . . engages in conduct inconsistent with the right to [it]." *Fla. Ins. Guar. Ass'n v. Rodriguez*, 153 So. 3d 301, 303 (Fla. 5th DCA 2014). Waiver "may be inferred from conduct or acts putting one off his guard and leading him to believe that a right has been waived." *Arbogast v. Bryan*, 393 So. 2d 606, 608 (Fla. 4th DCA 1981). The "primary focus" is not just litigation activity, *Rodriguez*, 153 So. 3d at 303, but the "inconsisten[cy]" of such activity with appraisal. *Fla. Ins. Guar. v. Monaghan*, 167 So. 3d 511, 512 (Fla. 5th DCA 2015).

---

[43] *Mango Hill #6 Condo. Ass'n, Inc.*, 117 So. 3d at 1230.

Breakwater's litigation has been inconsistent with its right to appraisal. It demanded a trial of all issues "for which a right to jury trial exists" under Florida law [R. 27]. Breakwater then withdrew the only count expressly seeking to compel appraisal [R. 43], leaving its breach of contract count remaining, which insufficiently sought that relief. Empire responded to Breakwater's withdrawal notice, explaining that the effect of the same was to put at issue only contractual damages, and that any amounts owed were now triable [R. 45]. As discussed above, the amount of loss can be a triable issue in Florida despite appraisal provisions or ensuing awards. *See Lewis*, 10 So. at 303 (reversing jury award due to trial court's erroneous refusal to instruct jury that insurer could only be liable for half of the amount of loss calculated by appraisal panel).

Under Rule 38(b), a party may demand a jury trial on "any issue triable by a jury." Notably, however, if that party fails to "specify the issues to have tried by a jury," "it is considered to have demanded a jury trial on all issues so triable." Fed. R. Civ. P. 38(c). Because Breakwater did not specifically exclude appraisal as an issue not to be tried by jury, and even withdrew its only express demand for appraisal from the Complaint, granting its motion to compel effectively withdrew this issue from trial without Empire's consent. *See, e.g., R & S Auto Sales v. Owners Ins. Co.*, No. 4:13-cv-479, 2015 WL 12434459, at *3 (S.D. Iowa Jan. 5, 2015) (explaining as much, but declining to rely on this reasoning only because the parties did not raise

the argument). *Cf. also Fla. Ins. Guar. Ass'n, Inc. v. Lustre*, 163 So. 3d 624, 629 (Fla. 2d DCA 2015) (noting requests to set case for trial as factor in waiver of appraisal analysis).

Second, the court relied on distinguishable authorities to conclude otherwise [R. 495 (citing *State Farm Fla. Ins. Co. v. Hernandez*, 172 So. 3d 473, 476 (Fla. 3d DCA 2015), and *Omni Health Solutions, LLC v. Zurich Am. Ins. Co.*, 857 F. App'x 501, 512 (11th Cir. 2021))]. Neither *Hernandez* nor *Omni Health Solutions* passed on this question. *Hernandez* merely stands for the proposition that the amount of loss is often an issue for the appraisers. But this must be qualified: it is so if the parties voluntarily partake of it; if a party obtains specific performance; and if appraisal has not been waived. Otherwise, it is triable. And the court itself recognized that *Omni Health Solutions*, involving Georgia law, is neither controlling nor analogous by introducing it with the signal "c.f." [R. 495].

## V.    The Court Wrongly Compelled Appraisal of Un-appraisable Amounts

The Court should not have compelled appraisal of RCV or O&L amounts [R. 495-96]. The claimed repairs and expenses were neither alleged nor proven completed, paid-for, or incurred. They could not have constituted a "loss."

First, Empire "[is] not obligated to pay replacement cost value," if Breakwater has "made no repairs." *Metal Products Co., LLC v. Ohio Security Ins. Co.*, No. 21-11612, 2022 WL 104618, at *2 (11t Cir. Jan. 11, 2022) (citing *Ceballo v. Citizens*

*Prop. Ins. Corp.*, 967 So. 2d 811, 815 (Fla. 2007) ("[C]ourts have almost uniformly held that . . . liability for replacement cost does not arise until the . . . replacement has been completed.") (quotation omitted). The Policy is clear that Empire will not owe any RCV absent completed repairs or replacement, and even then, payment will not exceed the amount actually spent on them [R. 98]. At the time the lower court compelled appraisal, Empire was entitled to summary judgment on RCV. *See Metal Products Co., LLC*, No. 21-11612, 2022 WL 104618, at *2 (affirming summary judgment on RCV claim absent completed and paid-for repairs); *CMR Construction & Roofing, LLC v. Empire Indem. Ins. Co.*, 843 Fed. App'x 189, 192 (11th Cir. 2021) (same).[44]

This renders appraisal of RCV "a purely speculative appraisal of damages as to which it may be contended no liability at all exists." *New Amsterdam Cas. Co. v. J.H. Blackshear, Inc.*, 156 So. 695, 696 (Fla. 1934). Appraisal is a mechanism to liquidate an unspecified amount of loss in the Policy. *Id.* There is nothing to liquidate in terms of the RCV (or O&L) amount, where that separate coverage has not been sufficiently alleged or shown triggered.

---

[44] Empire moved for summary judgment on these grounds [R. 231] but ruling was deferred in favor of Breakwater's appraisal motion [R. 572]. Breakwater admitted that the only actual repairs have been temporary and less than what Empire has already paid [R. 348 (n.7), 358 ("$333,545.35")].

Moreover, the RCV claim below was and remains admittedly unripe, rendering quantification of such benefits a "moot" issue. *See Executive Plaza, LLC v. Peerless Ins. Co.*, No. 09-1976, 2010 WL 11632677, at \*3 (E.D. N.Y. Feb. 8, 2010) (dismissing RCV claim for lack of repairs or replacements completed and paid for); *Woodsworth v. Erie Ins. Co.*, 743 F.Supp.2d 201, 211 (W.D. N.Y. 2010) (noting dismissal of claim against insurer for alleged breach by failing to appraise RCV, allowing only remaining claim for failure to appraise ACV).

Second, nor could Empire owe O&L expenses absent completed repairs and actually incurred costs. *See Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, 395 Fed. App'x 659, 665 (11th Cir. 2010) (reversing award of O&L damages where insured "never repaired the property and . . . actually incurred increased damages due to the enforcement of laws or ordinances") (citing *Ceballo*, 967 So. 2d at 815 (same)).

As with RCV, the court below also lacked Article III jurisdiction over any O&L claim. *See Cresthaven-Ashley Master Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 19-80959-civ, 2022 WL 873998, at \*4 (S.D. Fla. Mar. 24, 2022) (dismissing O&L claim on eve of trial *despite* appraisal award calculating it for lack of actual loss under the Policy); *Diamond Lake Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:19-cv-547, 2021 WL 6118076, at \*3 (M.D. Fla. Dec. 27, 2021) (dismissing O&L claim for failure to complete and pay for repairs). As such, O&L is not appraisable. *See Jossfolk v. United Property & Cas. Ins. Co.*, 110 So. 3d 110, 111

(Fla. 4th DCA 2013) ("[P]rior [appraisal] proceeding had not appraised Ordinance and Law coverage, *nor could it because none had been incurred at the time of the appraisal*.") (emphasis added).

Third, there existed no "disagreement" as to the RCV or O&L amounts under the appraisal provision in the absence of actual expenditures or repairs: no "loss" had occurred yet to trigger these benefits. Thus, appraisal of such amounts will be subsequently disregarded by the court below and not enforced. *See Ford v. American Security Ins. Co.*, No. 1:19-cv-20223-JLK, 2019 WL 6609239, at *3 (S.D. Fla. Dec. 5, 2019) (reducing appraisal award by subtracting prior payments and on basis of evidence showing actual expenses, granting summary judgment to insurer, and denying insured's motion to confirm appraisal award); *Allen v. Amica Mutual Ins. Co.*, No. 1:12-cv-49, 2013 WL 11927705, at *6 (N.D. Ga. Feb. 28, 2013) (RCV component of appraisal award not owed in absence of completed repairs). If, as things stood then, Empire was (and remains) entitled to either a dismissal of the these unripe RCV and O&L claims for lack of Article III jurisdiction, or summary judgment on these amounts, why would it be proper to appraise them?[45]

Fourth, the un-appraisability of RCV and O&L amounts and mootness in appraising them is buttressed by the appraisal provision's language. It allows for the

---

[45] Empire learned through discovery that some repairs have taken place, but not all, and certainly not the amount claimed in RCV or O&L. None of it is of record. And Empire remains entitled to summary judgment or dismissal as to these benefits.

appraisal of the "amount of loss." But neither RCV nor O&L amounts constitute a "loss" in this case. The Policy promises payment "for direct *physical loss of or damage* to Covered Property" [R. 134 (emphasis added)]. *See Vazquez v. Citizens Prop. Ins. Corp.*, 304 So. 3d 1280, 1285 (Fla. 3d DCA 2020) (affirming trial court's determination "that the 'insured loss' is the property that was actually damaged"); *Caribbean I Owners' Ass'n, Inc. v. Great American Ins. Co. of N.Y.*, 619 F.Supp.2d 1178, 1187 (S.D. Ga. 2008) ("In common, ordinary parlance, 'amount of loss' means the monetary value of property damage[.]").

However, RCV coverage is in the nature of *reimbursement* for the out-of-pocket *expenses* on repairs replacement [R. 98]. It does not represent actual property damage. The same is true of O&L [R. 66-68]. *Cf. Buckley Towers Condo., Inc.*, 395 Fed. App'x at 662, 665 (rejecting insured's characterization of RCV and O&L amounts as "advance payment" to begin repairs or replacement, since this sought amounts not yet triggered or due). Contrary to the lower court's suggestion [R. 442, 496], RCV and O&L are different from the replacement cost ("RC") or ordinance or law expenses sometimes estimated by adjusters or appraisers in calculating ACV. *See Sos v. State Farm Mutual Auto. Ins. Co.*, 396 F.Supp.3d 1074, 1079 (M.D. Fla. 2019).[46] RC is an estimate construct to ascertain ACV, defined as replacement cost

---

[46] *See also Trinidad v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 438 (Fla. 2013) ("[D]epreciation is not excluded from replacement cost coverage, whereas it

minus depreciation. RCV, however, is instead a reimbursement coverage for out-of-pocket expenses. Thus, the provision here does not contemplate appraisal of amounts other than the value of actual, physical damage, unlike RCV and O&L amounts.

Ultimately, the lower court's disagreement with Empire was premised on no controlling authorities [R. 441-442, 496]. The court instead assumed that RC and RCV represent identical concepts, venturing that the appraisers may calculate what are, admittedly, either non-losses or un-accrued, hypothetical losses, and that this would cap what Breakwater can recover in suit, if it ever decides to complete repairs and pay for them, or incur expenses, during or after appraisal. But this is contrary to the Policy's language and the indemnity principle underlying the entire bargain. *Cf. Dantzler Lumber & Export Co. v. Columbia Cas. Co.*, 115 Fla. 541, 555 (1934) ("[T]he contract of insurance [is] . . . [one] of indemnity."). If Breakwater seeks RCV and O&L amounts from the court in the absence of paid, completed repairs or incurred expenses, then it seeks to profit, not to be indemnified. Below, the court erroneously blessed this pursuit.

---

generally is excluded from actual cash value."); *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1279 (11th Cir. 2015) (same).

## CONCLUSION

Empire respectfully requests this Court to reverse the Honorable Magistrate

and District Court Judge's appraisal orders and remand for further proceedings.

BUTLER WEIHMULLER KATZ CRAIG
LLP

*s/Christian Lee Gonzalez-Rivera*

J. PABLO CÁCERES, ESQ.
Florida Bar No.: 131229
pcaceres@butler.legal
CHRISTIAN GONZÁLEZ-RIVERA, ESQ.
Florida Bar No. 1020707
cgonzalez-rivera@butler.lega1
400 N. Ashley Drive, Suite 2300
Tampa, Florida 33602
Telephone: (813) 281-1900
Facsimile: (813) 281-0900
*Counsel for Empire Indemnity Insurance Company*

## CERTIFICATE OF COMPLIANCE

Appellants brief complies with the word and page limits of the Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding all parts of the document exempted by rule 32(f), this document contains 12,472 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally spaced typeface using Microsoft Word in size 14 font.

/s/ *Christian Lee Gonzalez-Rivera*

CHRISTIAN L. GONZALEZ-RIVERA

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served

on all counsel of record on June 8, 2022, via the CM/ECF system.


/s/ *Christian Lee Gonzalez-Rivera*
CHRISTIAN L. GONZALEZ-RIVERA